UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| MARVIE ELLINGTON,<br><br>Plaintiff,<br><br>v.<br><br>FRANK KENDALL III, Secretary of the United States Air Force,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 23)**<br><br>Case No. 1:20-cv-00174<br><br>Magistrate Judge Daphne A. Oberg |

Pro se Plaintiff Marvie Ellington brought this action against Barbara M. Barrett,

Secretary of the United States Air Force ("the Secretary"),[1] her former employer, alleging she

was subject to discrimination and retaliation[2] in violation of Title VII of the Civil Rights Act of

1964[3] while working at Hill Air Force Base from 2009 to 2016.[4] Ms. Ellington raises five

---

[1] Barbara M. Barrett was the Secretary of the United States Air Force when this action was originally filed. However, she was replaced by Frank Kendall III on July 28, 2021. *See* Fed. R. Civ. P. 25(d).

[2] In his motion for summary judgment, the Secretary also addressed potential hostile work environment claims. (*See* Def.'s Mot. for Summ. J. ("MSJ") 26–27, Doc. No. 23.) However, in her opposition, Ms. Ellington clarified she is not asserting a hostile work environment claim in this case. (*See* Pl.'s Resp. to Order to Show Cause ("Opp'n") 14, Doc. No. 27 (stating the "original case claims . . . did not raise this issue").)

[3] 42 U.S.C. § 2000e *et seq.*

[4] (*See* Ex. 1 to Compl. 1–8, Doc. No. 1-4; Opp'n 2–3, Doc. No. 27.) It is not entirely clear which protected categories Ms. Ellington relies on in bringing her discrimination and retaliation claims. (*See* Compl. 3–4, Doc. No. 1; Ex. 1 to Compl. 1–8, Doc. No. 1-4.) This issue is addressed in greater detail below.

claims of discrimination and retaliation based on allegations that: (1) her supervisor threatened to write her up for insubordination on April 22, 2015, then issued a letter of counseling on April 23, 2015;[5] (2) she was given an increased workload on July 16, 2015;[6] (3) her supervisor denied her request for leave on July 21, 2015;[7] (4) her substantive duties were reassigned on October 5, 2015;[8] and (5) she was issued a letter of reprimand for conduct unbecoming of a federal employee on January 6, 2016.[9]  The Secretary now moves for summary judgment on all claims.[10]

Upon review of the briefing,[11] and considering the facts in the light most favorable to Ms. Ellington as the nonmoving party, Ms. Ellington has presented evidence sufficient to support a prima facie case of discrimination as to the reassignment of her duties (claim four) and a prima facie case of discrimination and retaliation as to the January 2016 letter of reprimand (claim five).  Moreover, for these claims, Ms. Ellington has identified genuine disputes of material fact

---

[5] (*See* Ex. 1 to Compl. 2:35–40, Doc. No. 1-4 (first claim).)

[6] (*See id.* at 3:91–94 (second claim).)

[7] (*See id.* at 4:128–5:130 (third claim).)

[8] (*See id.* at 6:167–71 (fourth claim).)

[9] (*See id.* at 7:223–8:227 (fifth claim).)  In her complaint, Ms. Ellington alleges she received the letter of reprimand on January 16, 2016.  (*See id.* at 8:251.)  However, a signed copy of the letter of reprimand submitted by the Secretary indicates Ms. Ellington received the letter of reprimand on January 6, 2016.  (*See* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[10] (MSJ, Doc. No. 23.)

[11] Oral argument is unnecessary; this decision is based on the parties' written memoranda.  *See* DUCivR 7-1(g).

as to whether the Secretary's proffered nondiscriminatory reasons for the actions taken against her were pretextual.  Accordingly, the motion for summary judgment is denied as to these claims.[12]  However, the motion is granted as to Ms. Ellington's remaining claims because she failed to meet her burden as to those claims.

## SUMMARY JUDGMENT STANDARD

Courts grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit."[14]  "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."[15]  In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."[16]  But "where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."[17]

---

[12] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Doc. No. 13.)

[13] Fed. R. Civ. P. 56(a).

[14] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted).

[15] *Id.* (internal quotation marks omitted).

[16] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

[17] *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted).

Because Ms. Ellington proceeds pro se, the court construes her filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers."[18]  Nonetheless, she must "follow the same rules of procedure that govern other litigants."[19]  While a court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[20] a court cannot act as the litigant's advocate in supplying additional factual allegations, developing legal theories, or constructing arguments.[21]

---

[18] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

[19] *Garrett*, 425 F.3d at 840 (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[20] *Smith*, 561 F.3d at 1096.

[21] *See id.* ("[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf.").

## RELEVANT FACTS[22]

The court considers the following facts in determining the Secretary's motion for summary judgment, drawing all reasonable inferences in favor of Ms. Ellington.[23]

Ms. Ellington was employed by the United States Air Force as a budget analyst for the 75th Civil Engineer Group at Hill Air Force Base in Utah from October 2009 to February 2016.[24]  Ms. Ellington was classified as a GS-11 employee for purposes of compensation.[25]  Ms. Ellington left Hill Air Force Base in 2016 to work for another organization; she was not

---

[22] These facts are based on the evidence submitted with the Secretary's motion, (Doc. No. 23), and reply, (Doc. No. 28), and Ms. Ellington's opposition, (Doc. No. 27).  Under Rule 56, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  The test for evaluating the admissibility of evidence at the summary judgment stage is employed upon proper objection.  *See, e.g.*, *Bird v. W. Valley City*, 832 F.3d 1188, 1194 n.1 (10th Cir. 2016) (declining to disregard evidence *sua sponte* where neither party objected to the admissibility of the evidence before the district court).  Where the Secretary and Ms. Ellington had sufficient opportunity to review the evidence submitted with their respective briefs and neither objected to its admissibility, all relevant evidence in the record is considered for purposes of this order.

[23] Although Ms. Ellington contends the Secretary's statement of undisputed facts is incomplete, (*see* Opp'n 1, Doc. No. 27), she does not clarify which facts she purports are missing or cite materials in the record in support of this position.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . .").  In some instances, Ms. Ellington appears to dispute the Secretary's characterization of events.  In these instances, the court relies on the underlying documents submitted with the parties' briefs rather than the Secretary's characterization, and resolves disputed facts in Ms. Ellington's favor.

[24] (MSJ, Statement of Undisputed Material Facts ("SMF") ¶ 2, Doc. No. 23; Opp'n 2, Doc. No. 27; Ex. 1 to Compl. 1:14–15, Doc. No. 1-4.)  To the extent the Secretary relies on Ms. Ellington's complaint in support of this (or any other) fact, the court does also.

[25] (MSJ, SMF ¶ 2, Doc. No. 23; *see also* Ex. 1 to Compl. 1:12–14, Doc. No. 1-4.)

terminated.[26]  As a budget analyst, Ms. Ellington was a bargaining unit employee with the

American Federation of Government Employees Union, Local 1592.[27]  Amanda Creacy was Ms.

Ellington's immediate supervisor[28] and Allen Fry was her second-level supervisor during the

relevant timeframe of April 2015 to January 2016.[29]  Ms. Creacy was hired to oversee the 75th

Civil Engineer Group in December 2014.[30]

　　　Ms. Ellington describes herself as a black/African American woman, over the age of

forty, with medium-brown skin tone.[31]  Ms. Ellington filed numerous Equal Employment

Opportunity (EEO) complaints while working for the 75th Civil Engineer Group,[32] two of which

are considered for purposes of this motion: (1) a formal EEO complaint filed on May 14, 2014,

alleging discrimination based on race after Ms. Ellington was denied the opportunity to be

---

[26] Where neither party asserted this fact in their briefing, it is based on Ms. Ellington's
allegations in the complaint and the Secretary's admissions in the answer.  (*See* Ex. 1 to Compl.
1:14–15, Doc. No. 1-4; Answer 3, Doc. No. 7.)

[27] (MSJ, SMF ¶ 3, Doc. No. 23; *see also* Ex. A to MSJ, Pre-Compl. Intake Form, Doc. No. 23-2.)

[28] (MSJ, SMF ¶ 4, Doc. No. 23; Ex. 1 to Compl. 1:16–17, Doc. No. 1-4; Ex. F to MSJ, Decl. of
Marvie Ellington Q&A 6–7, Doc. No. 24-5; Ex. B to MSJ, Decl. of Amanda Creacy Q&A 10a,
Doc. No. 24-1 at 3; Ex. O to MSJ, Decl. of Allen Fry Q&A 16, Doc. No. 24-14 at 3.)

[29] (Ex. F to MSJ, Ellington Decl. Q&A 8–9, Doc. No. 24-5; Ex. O to MSJ, Fry Decl. Q&A 10–
11, Doc. No. 24-14 at 3.)

[30] (*See* Ex. B to MSJ, Creacy Decl. Q&A 10, Doc. No. 24-1 at 3; *see also* Ex. 1 to Compl. 1:16–
17, Doc. No. 1-4; Answer 4, Doc. No. 7.)

[31] (MSJ, SMF ¶ 1, Doc. No. 23.; Opp'n 2, Doc. No. 27.)

[32] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 40–43, Doc. No. 27-13; MSJ 23, Doc. No. 23;
Opp'n 2, Doc. No. 27.)

considered for a temporary promotion,[33] and (2) a formal EEO complaint filed on July 27, 2015,

against Ms. Creacy, alleging discrimination based on most of the events forming the basis for her

Title VII claims in this case.[34]   While Ms. Ellington has engaged in other instances of protected

activity,[35] these events constitute her most recent protected activities, and the only protected

activities with temporal proximity to her claims.   Additionally, Ms. Ellington relies on the May

2014 complaint to support her retaliation claims,[36] and the July 2015 complaint encompasses the

events supporting Ms. Ellington's other claims.   Accordingly, these protected activities are

considered for purposes of this motion.   The facts related to Ms. Ellington's Title VII claims are

outlined below.   She uses the same facts to support her discrimination claims and her retaliation

claims.

---

[33] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 42, Doc. No. 27-13 (EEO complaint number
8L1M14022).)

[34] (*See* Ex. J to MSJ, Formal EEO Compl., Doc. No. 24-9 (EEO complaint number
8L1M15034).)   Although Ms. Ellington's July 2015 EEO complaint only includes events
through April 2015, the Final Agency Decision for this complaint addresses all subsequent
events forming the basis of Ms. Ellington's federal claims, including the October 2015
reassignment of duties and January 2016 letter of reprimand.   (*See* Ex. K to MSJ, EEO Final
Agency Dec. 5–6, 8, Doc. No. 24-10.)

[35] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 40–43, Doc. No. 27-13.)

[36] (*See id.* at 14, 17.)

<u>Verbal Warning and Letter of Counseling (Discrimination and Retaliation Claim One)</u>

On April 22, 2015, an interaction took place between Ms. Creacy and Ms. Ellington.[37] The parties dispute how this interaction began,[38] but agree it escalated into shouting (or, at the very least, raised voices) in front of other employees.[39]  According to the Secretary, the interaction began after Ms. Ellington criticized Ms. Creacy's management of the department,[40] and ended with Ms. Creacy telling Ms. Ellington she was "being insubordinate."[41]  According to Ms. Ellington, the interaction began after Ms. Creacy overheard a disagreement between Ms. Ellington and a coworker regarding a certain work procedure.[42]  Ms. Ellington alleges Ms. Creacy did not simply state she was "being insubordinate," but rather, "stated in front of another coworker that [Ms. Ellington] was going to be written up for insubordination."[43]  The Secretary

---

[37] (*See* MSJ, SMF ¶ 5, Doc. No. 23; Opp'n 2, Doc. No. 27; Ex. B to MSJ, Creacy Decl. Q&A 21–25, Doc. No. 24-1 at 5; Ex. F to MSJ, Ellington Decl. Q&A 18–23, Doc. No. 24-5.)

[38] (*See* Ex. B to MSJ, Creacy Decl. Q&A 23–25, Doc. No. 24-1 at 3; Ex. D to MSJ, Decl. of Jean Hughes Q&A 16, Doc. No. 24-3; Ex. F to MSJ, Ellington Decl. Q&A 23, Doc. No. 24-5.)  This dispute is immaterial where, as discussed below, even accepting Ms. Ellington's version of events as true, a verbal warning does not constitute an adverse employment action.

[39] (*See* Ex. B to MSJ, Creacy Decl. Q&A 23, Doc. No. 24-1 at 3; Ex. F to MSJ, Ellington Decl. Q&A 23, Doc. No. 24-5; Ex. C to MSJ, Decl. of Anna Dammer Q&A 19, Doc. No. 24-3.)

[40] (*See* MSJ, SMF ¶ 5, Doc. No. 23; Ex. C to MSJ, Dammer Decl. Q&A 19, Doc. No. 24-3; Ex. G to MSJ, Letter of Counseling from Amanda Creacy to Marvie Ellington (April 23, 2015) ¶ 2, Doc. No. 24-6.)

[41] (Ex. B to MSJ, Creacy Decl. Q&A 23–25, Doc. No. 24-1 at 3.)

[42] (Ex. F to MSJ, Ellington Decl. Q&A 23, Doc. No. 24-5.)

[43] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 3, 13, 14, 23, Doc. No. 27-13; *see also* Ex. F to MSJ, Ellington Decl. Q&A 23, Doc. No. 24-5; Opp'n 2, Doc. No. 27.)

interprets Ms. Ellington's version of events as an allegation that Ms. Creacy issued a verbal warning against Ms. Ellington.[44]

The following day, April 23, 2015, Ms. Creacy issued Ms. Ellington a letter of counseling for conduct unbecoming a federal employee and for disruption in the workplace—based on the incident the previous day.[45]  In the letter, Ms. Creacy noted Ms. Ellington's behavior "had a negative effect on the morale of the office team" and "this type of behavior is not acceptable by this organization or Hill AFB and will not be tolerated."[46]  Ms. Creacy indicated the letter's purpose was to "remind [Ms. Ellington] of [her] responsibilities as a [f]ederal employee and to stress the importance of behaving in a professional manner."[47]  Lastly, in the letter, Ms. Creacy warned Ms. Ellington that "future incidents of insubordination, harassment . . . [or] conduct unbecoming of a government employee may result in disciplinary action" and reminded her of resources available to her.[48]

---

[44] (*See* MSJ 3–5, 13–15, 20, 24, Doc. No. 23.)  Ms. Ellington does not use the term "verbal warning" in her pleadings.  (*See generally* Ex. 1 to Compl., Doc. No. 1-4.)  She only uses this term in response to the Secretary's use of it in his motion.  (*See* Opp'n 6, 8–9, 13, Doc. No. 27.) Accepting Ms. Ellington's version of events as true, and in light of the Secretary's position outlined above, the court interprets this event as a verbal warning against Ms. Ellington.

[45] (MSJ, SMF ¶ 7, Doc. No. 23; Ex. G to MSJ, Letter of Counseling from Amanda Creacy to Marvie Ellington (April 23, 2015), Doc. No. 24-6; Ex. M to Opp'n, Pl.'s Interrog. Resps. 3, Doc. No. 27-13.)

[46] (Ex. G to MSJ, Letter of Counseling from Amanda Creacy to Marvie Ellington (April 23, 2015) ¶ 2, Doc. No. 24-6.)

[47] (*Id.* at ¶ 1.)

[48] (*Id.* at ¶¶ 3–4.)

On April 30, 2015, Ms. Ellington filed a grievance with her union regarding the letter of counseling.[49]  After a full investigation, this grievance was denied.[50]  The union found the letter did not constitute a disciplinary action, Ms. Creacy acted responsibly and within her authority, and Ms. Ellington was not singled out for counseling because of her race, gender, or age.[51]  On review, the decision denying Ms. Ellington's grievance was sustained.[52]  Ms. Ellington contends the letter of counseling was the first in a series of events contributing to what she claims was a pattern of retaliation "inspired by" the EEO complaint she filed in May 2014.[53]

<u>Increase in Workload (Discrimination and Retaliation Claim Two)</u>

Throughout 2015, the finance department at Hill Air Force Base was restructured and experienced a great deal of turnover.[54]  Resulting staff shortages required employees to temporarily take on additional duties.[55]  The 75th Civil Engineering Group is a small department,

---

[49] (MSJ, SMF ¶¶ 10, 27, Doc. No. 23; Ex. X to MSJ, Standard Grievance Form, Doc. No. 25-9.)

[50] (*See* MSJ, SMF ¶ 28, Doc. No. 23; Ex. Y to MSJ, Step 1 Grievance Denial, Doc. No. 25-10; Ex. Z to MSJ, Step 2 Grievance Denial, Doc. No. 25-11.)

[51] (*See* MSJ, SMF ¶ 28, Doc. No. 23; Ex. Y to MSJ, Step 1 Grievance Denial ¶¶ 4.a.–c., Doc. No. 25-10.)

[52] (*See* MSJ, SMF ¶ 29, Doc. No. 23; Ex. Z to MSJ, Step 2 Grievance Denial ¶¶ 4–5, Doc. No. 25-11.)

[53] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 14, Doc. No. 27-13.)

[54] (MSJ, SMF ¶ 12, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 53, 69, Doc. No. 24-1 at 13, 16–17.)

[55] (MSJ, SMF ¶ 12, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 46, 53, Doc. No. 24-1 at 11, 13.)

typically consisting of five employees.[56]  As the most experienced and most tenured employee with the highest pay grade within the 75th Civil Engineering Group, Ms. Ellington was often asked to take on additional duties during times of turnover.[57]  As job vacancies were filled, Ms. Creacy and Mr. Fry worked to redistribute workloads, consistent with each employee's position and pay grade.[58]

On July 16, 2015, Ms. Creacy temporarily assigned Ms. Ellington fifty-seven purchase requests which had previously been assigned to a former employee.[59]  Ms. Ellington objected to this assignment because she felt she was already overworked compared to her coworkers.[60]  At the time she received this assignment, Ms. Ellington was already responsible for eighty similar purchase requests.[61]  According to Ms. Ellington, on July 16, 2015, she expressed her concerns to Ms. Creacy and Mr. Fry.[62]  She proposed that instead of handling the reassigned purchase

---

[56] (MSJ, SMF ¶ 13, Doc. No. 23.)

[57] (Id.; Ex. B to MSJ, Creacy Decl. Q&A 46, 79, Doc. No. 24-1 at 11, 18–19; Ex. O to MSJ, Fry Decl. Q&A 57, Doc. No. 24-14 at 10.)

[58] (MSJ, SMF ¶ 14, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A. 53, 69–70, 79, Doc. No. 24-1 at 13, 16–19; Ex. O to MSJ, Fry Decl. Q&A 67, Doc. No. 24-14 at 13.)

[59] (MSJ, SMF ¶ 14, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 46–53, Doc. No. 24-1 at 11–13; Ex. F to MSJ, Ellington Decl. Q&A 56–59, Doc. No. 24-5; Ex. O to MSJ, Fry Decl. Q&A 48–49, Doc. No. 24-14 at 8–9; Ex. P to MSJ, Email Exchange between Amanda Creacy and Marvie Ellington (July 16–21, 2015), Doc. No. 25-1 at 3.)

[60] (See Ex. F to MSJ, Ellington Decl. Q&A 59, Doc. No. 24-5; Ex. M to Opp'n, Pl.'s Interrog. Resps. 18, Doc. No. 27-13.)

[61] (Ex. F to MSJ, Ellington Decl. Q&A 59, Doc. No. 24-5.)

[62] (Id.; Ex. P to MSJ, Email Exchange between Amanda Creacy and Marvie Ellington (July 16–21, 2015), Doc. No. 25-1 at 3.)

requests directly, she help a coworker, Natalie Baughman, complete them because they had been reassigned to Ms. Baughman originally.[63]   According to Ms. Ellington, although Mr. Fry agreed to this approach, Ms. Creacy did not.[64]   The Secretary disputes Mr. Fry agreed to this proposal.[65] According to the Secretary, Ms. Ellington was assigned the fifty-seven purchase requests because they needed to be done and Ms. Ellington was the most experienced person for the job.[66]

<u>Denial of Leave (Discrimination and Retaliation Claim Three)</u>

The Air Force offers two types of annual leave: planned and unplanned.[67]   Planned leave is scheduled at the beginning of each calendar year.[68]   Unplanned leave is for more spontaneous requests and must be approved by a supervisor after considering employee desires, personal convenience, and workload.[69]   On July 20, 2015, Ms. Ellington requested unplanned leave for

---

[63] (Ex. F to MSJ, Ellington Decl. Q&A 59, Doc. No. 24-5; Ex. P to MSJ, Email Exchange between Amanda Creacy and Marvie Ellington (July 16–21, 2015), Doc. No. 25-1 at 3.)

[64] (*See* Ex. F to MSJ, Ellington Decl. Q&A 59, Doc. No. 24-5.)

[65] (*See* Ex. B to MSJ, Creacy Decl. Q&A 52, Doc. No. 24-1 at 12–13; Ex. O to MSJ, Fry Decl. Q&A 56, Doc. No. 24-14 at 9–10.)   This dispute is immaterial because even accepting Ms. Ellington's version of events as true, it does not affect whether the increased workload constitutes an adverse employment action, as explained below.

[66] (Ex. B to MSJ, Creacy Decl. Q&A 53, Doc. No. 24-1 at 13; Ex. O to MSJ, Fry Decl. Q&A 49, 57, Doc. No. 24-14 at 8–10.)

[67] (MSJ, SMF ¶ 18, Doc. No. 23; Ex. M to Opp'n, Pl.'s Interrog. Resps. 9, Doc. No. 27-13; Ex. R. to MSJ, Master Labor Agreement, Article 23, Annual Leave, Doc. No. 25-3.)

[68] (MSJ, SMF ¶ 18, Doc. No. 23; Ex. R. to MSJ, Master Labor Agreement, Article 23, Annual Leave, Doc. No. 25-3.)

[69] (MSJ, SMF ¶ 18, Doc. No. 23; Ex. M to Opp'n, Pl.'s Interrog. Resps. 9, Doc. No. 27-13.)

July 24, 2015 and July 30, 2015.[70]  On July 21, 2015, Ms. Creacy sent an email to Ms. Ellington

regarding her leave request, stating:

> I am hesitant to approve the un-planned leave requests you sent yesterday due to
> the fact that you are not meeting workload deadlines that I have set forth.  If you
> are not making it a priority and will not be meeting the deadline then approving any
> leave would only add to the already bleak situation.  At this point I simply cannot
> approve the un-planned leave when you are unable to tell me if you're going to
> meet the deadlines that you are being held to for us to uphold mission needs.[71]

The deadline referenced in Ms. Creacy's email related to the fifty-seven purchase requests

assigned to Ms. Ellington on July 16, 2015.[72]  The parties dispute whether this email constituted

a denial of Ms. Ellington's leave request.[73]  According to Ms. Ellington, the email constituted a

denial of her request for leave.[74]  According to the Secretary, rather than denying Ms. Ellington's

leave request, Ms. Creacy left it to "Ms. Ellington to complete her taskings before a final

---

[70] (MSJ, SMF ¶ 19, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 59, Doc. No. 24-1 at 14.)
Although the actual request for leave did not state the reasons Ms. Ellington sought leave, it later
became clear the leave was for a doctor's appointment and birthday plans.  (*See* Ex. M to Opp'n,
Pl.'s Interrog. Resps. 45–46, Doc. No. 27-13.)

[71] (Ex. S to MSJ, Email Commc'n between Amanda Creacy and Marvie Ellington (July 16, 2015
3:30 pm to July 21, 2015 12:01 pm), Doc. No. 25-4; Ex. K to Opp'n, Email Commc'n between
Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 24, 2015 5:04 pm), Doc.
No. 27-11.)

[72] (*See* Ex. T to MSJ, Email Commc'n between Amanda Creacy and Marvie Ellington (July 21,
2015 11:19 am to July 24, 2015 5:04 pm), Doc. No. 25-5; Ex. K to Opp'n, Email Commc'n
between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 24, 2015 5:04
pm), Doc. No. 27-11.)

[73] This dispute is immaterial because even accepting Ms. Ellington's version of events as true, a
supervisor's decision to deny a specific, discrete leave request does not constitute an adverse
employment action, as explained below.

[74] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 9, Doc. No. 27-13; *see also* Ex. F to MSJ,
Ellington Decl. Q&A 78–79, Doc. No. 24-5 ("Ms. Creacy also called me into her office and told
me she would not approve my leave.").)

decision regarding her leave requests would be made."[75]  Ms. Ellington did not respond to Ms.

Creacy's email until end of day on July 24, 2015.[76]  In her response, Ms. Ellington suggested

"the deadline [was] unattainable" and explained why.[77]  In the end, Ms. Ellington did not take

July 24 or July 30 off.[78]  Ms. Ellington contends denial of her leave request contributed to a

pattern of retaliation "inspired by" the EEO complaint she filed in May 2014.[79]

<u>Reassignment of Duties (Discrimination and Retaliation Claim Four)</u>

During the restructuring and turnover of the financial department in 2015,[80] Ms. Creacy

and Mr. Fry realigned employee workloads and worked on cross-training employees in order to

"maintain mission continuity if/when another member left the team."[81]  The reassignment plan

---

[75] (Ex. B to MSJ, Creacy Decl. Q&A 60–61, Doc. No. 24-1 at 14; *see also* Ex. O to MSJ, Fry Decl. Q&A 59, 64, Doc. No. 24-14 at 11–12 (reiterating the final decision regarding leave was left up to Ms. Ellington and stating "there was no actual leave disapproval paperwork").)

[76] (MSJ, SMF ¶ 21, Doc. No. 23; Ex. T to MSJ, Email Commc'n between Amanda Creacy and Marvie Ellington (July 21, 2015 11:19 am to July 24, 2015 5:04 pm), Doc. No. 25-5; Ex. K to Opp'n, Email Commc'n between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 24, 2015 5:04 pm), Doc. No. 27-11.)

[77] (Ex. T to MSJ, Email Commc'n between Amanda Creacy and Marvie Ellington (July 21, 2015 11:19 am to July 24, 2015 5:04 pm), Doc. No. 25-5; Ex. K to Opp'n, Email Commc'n between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 24, 2015 5:04 pm), Doc. No. 27-11.)

[78] (MSJ, SMF ¶ 21, Doc. No. 23; Ex. O to MSJ, Fry Decl. Q&A 64, Doc. No. 24-14 at 12 (stating Ms. Ellington "just came to work").)

[79] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 14, Doc. No. 27-13.)

[80] (MSJ, SMF ¶ 12, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 53, 69, Doc. No. 24-1 at 13, 16–17.)

[81] (Ex. B to MSJ, Creacy Decl. Q&A 69, Doc. No. 24-1 at 16–17; *see also* Ex. O to MSJ, Fry Decl. Q&A 67, Doc. No. 24-14 at 13; Ex. E to Opp'n, Email from Amanda Creacy to the 75th Civil Engineering Group (July 20, 2015), Doc. No. 27-5.)

was announced on July 20, 2015, and implemented on October 5, 2015.[82]  Ms. Ellington opposed

this plan because she believed it would result in the reassignment of her primary duties, leaving

her with only menial tasks.[83]

It is undisputed that the reassignment plan impacted everyone in the 75th Civil

Engineering Group including Ms. Ellington (a black woman), Ms. Baughman (a white woman),

Ms. Kofoed (a white woman), and Mr. Yong (a Korean man).[84]  However, the parties dispute

whether the reassignment resulted in the removal of Ms. Ellington's primary duties.  Ms.

Ellington contends all her major duties were reassigned to Ms. Baughman, a white coworker

with a lower pay grade (GS-7).[85]  She claims the reassignment plan was designed to deceptively

demote her and stunt her promotional opportunities and career goals,[86] and it contributed to a

pattern of retaliation "inspired by" the EEO complaint she filed in May 2014.[87]  The Secretary

maintains none of Ms. Ellington's primary duties were removed in the reassignment, and Ms.

---

[82] (Ex. E to Opp'n, Email from Amanda Creacy to the 75th Civil Engineering Group (July 20, 2015), Doc. No. 27-5; Ex. Q to MSJ, Email from Amanda Creacy to Allen Fry and the 75th Civil Engineering Group (Oct. 5, 2015), Doc. No. 25-2.)

[83] (*See* Ex. F to Opp'n, Email from Marvie Ellington to Amanda Creacy (Aug. 7, 2015), Doc. No. 27-6; Ex. M to Opp'n, Pl.'s Interrog. Resps. 19, Doc. No. 27-13.)

[84] (*See* Ex. B to MSJ, Creacy Decl. Q&A 70, Doc. No. 24-1 at 17 (stating "the entire team received new duties in order to lighten the large amounts of workload" including "Caucasian, Korean, and Black" employees; Ex. F to MSJ, Ellington Decl. Q&A 88, Doc. No. 24-5 (stating "[t]he entire plan affected everyone in [the 75 Civil Engineering Group]"); Ex. O to MSJ, Fry Decl. Q&A 74, Doc. No. 24-14 at 14 (stating "[t]he entire staff had their workloads changed").)

[85] (*See* Ex. F to MSJ, Ellington Decl. Q&A 62, 84, Doc. No. 24-5.)

[86] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 18–19, 36, Doc. No. 27-13.)

[87] (*See id.* at 14–15.)

Ellington's tasks remained complex and fell appropriately within her pay grade.[88]  This dispute

is material, as discussed below.

<u>Letter of Reprimand (Discrimination and Retaliation Claim Five)</u>

On November 17, 2015, Ms. Ellington received a Notice of Proposed Reprimand from

Ms. Creacy.[89]  The notice of reprimand was based on two incidents occurring in October 2015.[90]

During the first incident, on October 15, 2015, Ms. Ellington and her team lead, Michelle Dean,

expressed a difference of opinion regarding a procedure related to the department's government

purchase card program.[91]  Ms. Ellington believed Ms. Creacy implemented the procedure in

violation of Air Force policy.[92]  The discussion between Ms. Ellington and Ms. Dean grew

heated and Ms. Dean eventually walked away.[93]  After learning of this confrontation, Ms. Creacy

asked Ms. Ellington to discuss it in her office on October 27, 2015.[94]  This meeting quickly

---

[88] (*See* Ex. B to MSJ, Creacy Decl. Q&A 74, 77, 80, Doc. No. 24-1 at 17–19; Ex. O to MSJ, Fry Decl. Q&A 67, 74–76, Doc. No. 24-14 at 13–14.)

[89] (Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6.)

[90] (*See id.*)

[91] (MSJ, SMF ¶ 23, Doc. No. 23; Ex. M to Opp'n, Pl.'s Interrog. Resps. 31–32, Doc. No. 27-13; Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6.)

[92] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 31, Doc. No. 27-13; Ex. B to MSJ, Creacy Decl. Q&A 85, Doc. No. 24-1 at 20.)

[93] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 32, Doc. No. 27-13.)

[94] (Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6; Ex. M to Opp'n, Pl.'s Interrog. Resps. 32–33, Doc. No. 27-13.)

escalated.[95]  Believing Ms. Ellington's behavior during these incidents to be unprofessional and disrespectful, Ms. Creacy issued a Notice of Proposed Reprimand.[96]

A formal letter of reprimand was issued on January 6, 2016—after Ms. Ellington was given time to respond to the proposed reprimand.[97]  The letter did not include a suspension, nor did it impact Ms. Ellington's pay or position.[98]  However, the letter would remain in Ms. Ellington's personnel file for two years and could augment future discipline.[99]  Ms. Ellington alleges the letter of reprimand was part of a pattern of retaliation for the EEO complaint she filed in May 2014[100] and was issued because she—a black woman—questioned Ms. Creacy's authority.[101]

---

[95] (Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6.)

[96] (*Id.*)

[97] (MSJ, SMF ¶ 22, Doc. No. 23; Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)  The date at the top of the letter of reprimand is January 5, 2016, but the date at the bottom of the letter, next to Ms. Ellington's signature indicating when she received it, is January 6, 2016.  (*See id.*)

[98] (*See* MSJ, SMF ¶ 26, Doc. No. 23; Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[99] (*See* MSJ, SMF ¶ 26, Doc. No. 23; Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[100] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 15, Doc. No. 27-13.)

[101] (*See* Ex. M to MSJ, EEOC Appeal Dec. 5, Doc. No. 24-12 (recounting Ms. Ellington's claim that Ms. Creacy's decision to issue the reprimand illustrates Ms. Creacy's belief that "[Ms. Ellington], a black woman over the age of 40, should not question [Ms. Creacy's] authority").)

# ANALYSIS

The Secretary moves for summary judgment, arguing Ms. Ellington cannot establish a prima facie case of discrimination based on race, color, or age, cannot establish a prima facie case of retaliation, and cannot prove pretext.[102]  He contends any claims relying on age or color as a basis of discrimination are not properly before the court in the first instance.[103]  He also argues claims based on the April 2015 letter of counseling are not properly before the court.[104]  These issues are addressed first (Part I), followed by an analysis of whether Ms. Ellington has raised genuine disputes of material fact regarding her claims of discrimination (Part II) and retaliation (Part III).

I.      Claims Properly Before the Court

First, the Secretary argues any claims based on age are not properly before the court because Ms. Ellington failed to allege age discrimination in her complaint.[105]  Next, he contends that where Ms. Ellington did not pursue claims based on color administratively, they are likewise not properly before the court.[106]  Lastly, the Secretary argues that where Ms. Ellington chose to file a union grievance regarding her April 23, 2015 letter of counseling, she cannot properly pursue the same claim through the EEO administrative process; thus, any claims based on that

---

[102] (MSJ 2, 10–20, 22–23, Doc. No. 23; Def.'s Reply in Support of MSJ 2–3, Doc. No. 28.)

[103] (*See* MSJ 2, 10 n.2, 27–30, Doc. No. 23.)

[104] (*Id.* at 30–31.)

[105] (*Id.* at 2, 10 n.2, 30.)

[106] (*Id.* at 27–29.)

letter are not properly before the court.[107]  The Secretary's position as to age and color is well-founded, whereas his position with respect to the letter of counseling is not.

### a. *Age Discrimination*

In arguing Ms. Ellington failed to adequately claim age discrimination, the Secretary focuses on the fact that Ms. Ellington did not check the "age discrimination" box on her form complaint or include the Age Discrimination in Employment Act (ADEA)[108] as a basis for her claims.[109]  Although the Secretary acknowledges Ms. Ellington, "at times, alludes to her age in her complaint narrative," he argues "she does not expressly claim in this action that any of the incidents were discriminatory based on her age."[110]  In her opposition, Ms. Ellington notes she is "refuting the Defendant's claims" on this point,[111] but she also appears to concede "the Court could note from my original claims . . . and all presented information and responses that I did not try to prove *age* or color as a discriminatory base."[112]

There is a split of authority on whether a motion for summary judgment challenging only the sufficiency of the pleadings may be considered as a motion to dismiss.[113]  The Second, Fifth,

---

[107] (*Id.* at 30–31.)

[108] 29 U.S.C. § 623.

[109] (MSJ 30, Doc. No. 23; *see also* Compl. 3–4, Doc. No. 1.)

[110] (MSJ 30, Doc. No. 23 (citing Ex. 1 to Compl., Doc. No. 1-4).)

[111] (Opp'n 16, Doc. No. 27.)

[112] (*Id.* at 14–15 (emphasis added).)

[113] *See Roza Hills Vineyards, LLC v. Wells Fargo, N.A.*, No. C20-1405-JCC, 2020 U.S. Dist. LEXIS 235718, at *10 (W.D. Wash. Dec. 15, 2020) (unpublished) (highlighting circuit split).

and Eleventh circuits evaluate summary judgment motions under Rule 12(b)(6) standards when

defendants argue they are entitled to summary judgment because claims are insufficiently

pleaded.[114] Following this approach, in *Katz v. Molic*,[115] a district court in the Second Circuit

found that "[w]hen a summary judgment motion is made solely on the pleadings, it is

functionally the same as a motion to dismiss for failure to state a claim upon which relief can be

granted."[116] In such instances, courts should "not look beyond the pleadings to extrinsic

evidence in determining whether the [claims] should be dismissed."[117] However, the First

Circuit has rejected this approach, finding "no authority that allows for the . . . conversion of a

summary judgment motion into a motion to dismiss for failure to state a claim."[118] The Tenth

Circuit has not weighed in on this issue, but district courts within the Tenth Circuit have

---

[114] *See Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993) ("Because the [] motion for summary judgment only challenged the sufficiency of the plaintiffs' pleadings, the motion should have been evaluated much the same as a 12(b)(6) motion to dismiss."); *Blum v. Morgan Guaranty Trust Co.*, 709 F.2d 1463, 1466 (11th Cir. 1983) ("A motion for summary judgment may be made solely on the basis of the complaint, in which case the motion is to be treated as the functional equivalent of a motion to dismiss for failure to state a claim under Fed. R. Civ. P 12(b)(6)."); *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (holding "a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment," "where appropriate," meaning when "made solely on the pleadings").

[115] 128 F.R.D. 35 (S.D.N.Y. 1989).

[116] *Id.* at 38; *see also Ashe*, 992 F.2d at 544 ("Where a motion for summary judgment is based solely on the pleadings and makes no reference to affidavits, depositions, or interrogatories, it makes no difference whether the motion is evaluated under Rule 56 or Rule 12(b)(6) because both standards reduce to the same question." (internal quotation marks omitted)).

[117] *Katz*, 128 F.R.D. at 38.

[118] *Rios-Campbell v. U.S. Dep't of Commerce*, 927 F.3d 21, 26 (1st Cir. 2019).

followed the majority approach.[119]  Where the weight of authority favors evaluating summary

judgment motions challenging the sufficiency of the pleadings under the standards of Rule

12(b)(6), Ms. Ellington's claims of age discrimination are considered under this standard.

      To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a

claim to relief that is plausible on its face."[120]  The court accepts as true well-pleaded factual

allegations and views the allegations in the light most favorable to the plaintiff, drawing all

reasonable inferences in the plaintiff's favor.[121]  But the court need not accept the plaintiff's

conclusory allegations as true.[122]  "[A] plaintiff must offer specific factual allegations to support

each claim."[123]

      The factual allegations in Ms. Ellington's complaint are insufficient to state a claim based

on age discrimination.  Ms. Ellington mentions age twice in her complaint.  First, Ms. Ellington

states her own age in the last sentence of her introductory paragraph, along with her sex, race,

---

[119] *See, e.g.*, *Hunnicutt v. Smith*, No. 18-619 JCH/GBW, 2021 U.S. Dist. LEXIS 153692, at *16 (D.N.M. Aug. 16, 2021) (unpublished) (finding defendants' "exclusive reliance on the allegations in the Amended Complaint" makes their summary judgment motions "the functional equivalent of motions to dismiss for failure to state a claim"); *Dotson v. Energy Future Holdings Corp.*, No. CIV-17-575-D, 2018 U.S. Dist. LEXIS 18439, at *3 (W.D. Okla. Feb. 5, 2018) (unpublished) (noting motion for summary judgment based only on the pleadings is equivalent to motion to dismiss).

[120] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *see also* Fed. R. Civ. P. 12(b)(6).

[121] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[122] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[123] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

and color.[124]  Second, Ms. Ellington references the ages of three coworkers in connection with a

claim alleging discrimination and retaliation relating to reassignment of work duties.[125]  But

nowhere does Ms. Ellington tie age to this claim.  The factual allegations supporting the claim

focus on the appropriateness of employees at certain pay grades being assigned to oversee

specific tasks.[126]  Age is mentioned nowhere else in the complaint.  Even considered in the light

most favorable to Ms. Ellington, Ms. Ellington has failed to allege facts sufficient to state a claim

to relief with regard to age.  Accordingly, to the extent Ms. Ellington intended to raise claims

based on age, those claims are dismissed.

　　Moreover, even if Ms. Ellington's claims based on age were evaluated under Rule 56's

summary-judgment standard[127] (consistent with the First Circuit's approach), they would fail.

Ms. Ellington has not established a genuine dispute of material fact as to any claims of

discrimination based on age, nor has she presented evidence sufficient to support a claim of age

discrimination.  Although she has presented evidence generally referencing her age and the ages

of coworkers, most of these references are tied to her retaliation claims.[128]  The remaining

references to age are either so ambiguous that it is unclear whether Ms. Ellington is attempting to

---

[124] (Ex. 1 to Compl. 1:7–9, Doc. No. 1-4.)

[125] (*See id.* at 7:197–99 (noting one co-worker was approximately forty years old, one was younger than forty, and one was older).)

[126] (*See id.* at 6:172–7:222.)

[127] *See* Fed. R. Civ. P. 56(a).

[128] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 15, 17–19, 21, 23, 25, 31, Doc. No. 27-13 (referencing age in response to an interrogatory focusing on retaliation claims or in relation to a "Merit Promotion Principle, Prohibited Personnel Practice 9: Protection Against *Retaliation* for Employees Who Engage in Protected Activity" (emphasis added)).)

support an age discrimination claim,[129] or too inconsistent to support any such claims.[130]
Further, in her complaint, which she submitted as an exhibit in support of her opposition, Ms.
Ellington did not select age discrimination or the ADEA[131] as a basis for her claims in this
action.[132]  Lastly, Ms. Ellington acknowledges she "did not try to prove *age* or color as a
discriminatory bas[is]" in her original claims.[133]  Even when considered in the light most
favorable to Ms. Ellington, this evidence is insufficient to support a claim of age discrimination
or to establish a genuine dispute of material fact.  Accordingly, the Secretary would be entitled to
summary judgment on all claims of age discrimination if the evidence were considered under
Rule 56(a).

        *b.  Discrimination Based on Color*

      The Secretary argues Ms. Ellington's claims based on color "are not properly before the
court because she did not pursue her administrative remedies with regard to them."[134]

      A federal employee alleging discrimination or retaliation under Title VII must exhaust
her administrative remedies for each individual discriminatory or retaliatory act before filing

---

[129] (*See id.* at 19, 23, 25, 29–31.)

[130] (*Compare id.* at 15 (referencing two white females "under the age of 40"), *with id.* at 23
(referencing a white female coworker "possibly over the age of 40"), *and* Ex. F to MSJ,
Ellington Decl. Q&A 88, Doc. No. 24-5 (listing the ages of her three coworkers as follows:
Natalie Baughman, "approximately 40 years of age"; Rachael Kofoed, "under the age of 40";
Mike Yong, "over the age of 40").)

[131] 29 U.S.C. § 623.

[132] (Ex. T to Opp'n, Form Compl., Doc. No. 27-20.)

[133] (Opp'n 14–15, Doc. No. 27 (emphasis added).)

[134] (MSJ 27–29, Doc. No. 23.)

suit.[135]  This "requirement is not a jurisdictional prerequisite for suit but is a claims-processing

rule that the employer may raise as an affirmative defense."[136]  Because "it is a mandatory

rule, . . . the court must enforce this exhaustion requirement if the employer properly raises it"[137]

and may do so at the summary judgment stage.[138]

The Secretary concedes Ms. Ellington exhausted her administrative remedies for her

claims of discrimination based on race, but contends "she did not allege discrimination based on

the separate class of color in her informal EEO complaints, formal EEO complaint, in any of the

amendments to it, or at any time during the administrative process."[139]  While noting she refutes

the Secretary's claims on this point and asserting her complaint forms were incorrectly

marked,[140] Ms. Ellington also acknowledges "the Court could note from my original claims . . .

---

[135] *See* 29 C.F.R. § 1614.105(a)(1); *see also Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020); *Robinson v. Rhodes Furniture, Inc.*, 92 F. Supp. 2d 1162, 1164 (D. Kan 2000); *Martinez v. City & Cnty. of Denver*, No. 17-cv-03140-NYW, 2019 U.S. Dist. LEXIS 58696, at *10–11 (D. Colo. Apr. 5, 2019) (unpublished).

[136] *Hickey*, 969 F.3d at 1118; *see also Martinez*, 2019 U.S. Dist. LEXIS 58696, at *11.

[137] *Hickey*, 969 F.3d at 1118.

[138] *See, e.g.*, *id.* at 1124 (affirming denial of summary judgment based on failure to exhaust administrative remedies); *Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814, 817 (10th Cir. 2006) (unpublished) (affirming grant of summary judgment based, in part, on failure to exhaust administrative remedies); *Johnson v. Spirit Aerosystems, Inc*., No. 20-cv-00138-GKF-CDL, 2022 U.S. Dist. LEXIS 74062, at *14–15, 21–22 (N.D. Okla. Mar. 24, 2022) (unpublished) (granting summary judgment based on failure to exhaust administrative remedies); *Martinez*, 2019 U.S. Dist. LEXIS 58696, at *10–11 (same); *Robinson*, 92 F. Supp. 2d at 1164 (concluding the court lacked jurisdiction to address a sex discrimination claim where the plaintiff failed to exhaust her administrative remedies).

[139] (MSJ 29, Doc. No. 23.)

[140] (Opp'n 15, Doc. No. 27.)

and all presented information and responses that I did not try to prove age or *color* as a discriminatory base."[141]

Additionally, Ms. Ellington argues color and race overlap.[142]  This argument fails because while color is closely related to race, "[c]olor discrimination is a separate cause of action from race discrimination"[143] and a plaintiff "must show direct or sufficient indirect evidence specific as to each type of claim in order to survive summary judgment as to claims of that type."[144]  Ms. Ellington has failed to identify evidence showing she exhausted her administrative remedies for claims based on color before bringing this Title VII action.  And the Secretary has provided extensive evidence related to Ms. Ellington's underlying EEO claims which lack any reference to color as a basis for discrimination.[145]

---

[141] (*Id.* at 14–15 (emphasis added).)

[142] (*Id.* at 15.)

[143] *Davis v. Quebecor World*, No. 01 C 8014, 2002 U.S. Dist. LEXIS 267, at *4 (N.D. Ill. Jan. 9, 2002) (unpublished).

[144] *Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-cv-00491, 2022 U.S. Dist. LEXIS 1924, at *37 (N.D. Tenn. Jan. 5, 2022) (unpublished); *see also Burrage v. FedEx Freight, Inc.*, No. 4:10CV2755, 2012 U.S. Dist. LEXIS 43365, at *6 (N.D. Ohio Mar. 29, 2012) (unpublished) ("[I]t does not follow that comments supporting one type of discrimination can provide the sole support for a claim for a separate and distinct form of discrimination.").

[145] (*See* MSJ 29, Doc. No. 23; *see also* Ex. A to MSJ, EEO Pre-Compl. Intake Form, Doc. No. 23-2 (containing no allegation of color as a discriminatory basis); Ex. J to MSJ, Formal EEO Compl., Doc. No. 24-9 (same); Ex. K to MSJ, EEO Final Agency Dec., Doc. No. 24-10 (same); Ex. L to MSJ, Notice of Appeal, Doc. No. 24-11; Ex. M to MSJ, EEOC Appeal Dec., Doc. No. 24-12; Ex. N to MSJ, Req. Appeal Reconsideration, Doc. No. 24-13; Ex. X to MSJ, Standard Union Grievance Form, Doc. No. 25-9 (containing no allegation of color as a discriminatory basis); Ex. Y to MSJ, Step 1 Grievance Denial, Doc. No. 25-10; Ex. Z to MSJ, Step 2 Grievance Denial, Doc. No. 25-11.)

Where Ms. Ellington failed to exhaust her administrative remedies for any claims based on color, the Secretary is entitled to summary judgment on all such claims.

### c.  *April 2015 Letter of Counseling*

The Secretary argues Ms. Ellington cannot rely on the April 2015 letter of counseling in support of any of her discrimination or retaliation claims because she chose to file a union grievance regarding the letter rather than address it through the EEO administrative process.[146] As a result, the Secretary contends any claims stemming from the letter of counseling are not properly before the court.[147]

The Civil Service Reform Act of 1978[148] governs collective bargaining agreements between labor unions and federal employers.  One purpose of the act is to ensure such agreements include procedures for settling grievances.[149]  Typically, the procedures outlined in a collective bargaining agreement are the "exclusive administrative procedures for resolving grievances which fall within [a bargaining agreement's] coverage."[150]  However, 5 U.S.C. § 7121(d) creates an exception to this general rule:

> An aggrieved employee affected by a prohibited personnel practice [including discrimination based on race] which also falls under the coverage of the negotiated

---

[146] (*See* MSJ 30–31, Doc. No. 23.)

[147] (*Id.*)

[148] Pub. L. No. 95-454, 92 Stat. 1111 (Oct. 13, 1978).

[149] *See Haney v. Donovan*, No. 08-2658 JAR, 2010 U.S. Dist. LEXIS 32426, at *29 (D. Kan. Mar. 30, 2010) (unpublished).

[150] 5 U.S.C. § 7121(a)(1).  Courts treat "5 U.S.C. § 7121(d) as covering retaliation claims as well as discrimination claims."  *See Haney*, 2010 U.S. Dist. LEXIS 32426, at *39 (collecting cases).

grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, *but not both*.[151]

Regulations governing the Equal Employment Opportunity Commission embody this same approach.[152]  Under this scheme, "[a]ny [] complaint filed after a grievance has been filed on the same matter shall be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure."[153]

The Secretary interprets these provisions as precluding Ms. Ellington from bringing suit in federal court with respect to the letter of counseling because she chose to file a union grievance rather than pursue an EEO complaint.[154]  However, the Secretary fails to establish how Ms. Ellington's choice to file a union grievance with regard to the letter of counseling forecloses her ability to raise that same claim in federal court under Title VII.  Parties may pursue Title VII remedies after bringing union grievances.[155]  Nothing in the legal provisions cited by the

---

[151] 5 U.S.C. § 7121(d) (emphasis added).

[152] *See* 29 C.F.R. § 1614.301(a) ("[A] person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both.").

[153] *Id.*

[154] (MSJ 30–31, Doc. No. 23.; *see also* Ex. A to MSJ, Pre-Compl. Intake Form, Doc. No. 23-2 at 5; Ex. X to MSJ, Standard Grievance Form, Doc. No. 25-9; Ex. Y, Step 1 Grievance Denial, Doc. No. 25-10; Ex. Z to MSJ, Step 2 Grievance Denial, Doc. No. 25-11.)

[155] *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974) ("Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement."); *Varner v. Nat'l Super Mkts., Inc.*, 94 F.3d 1209, 1213 (8th Cir. 1996) ("[T]he United States Supreme Court has held that the pursuit of a claim through grievance and binding arbitration under a [collective bargaining agreement] does not preclude a civil suit under Title VII."); *Burris v. CSX Transp. Co.*, No. 4:17-cv-2681-RBH-TER, 2018 U.S. Dist. LEXIS 59054, at *4–5 (D.S.C. Mar. 14, 2018) (unpublished) ("Plaintiff's participation in

Secretary precludes Ms. Ellington from filing suit in federal court after electing to pursue the union grievance process, so long as she exhausted her administrative remedies.[156]

The Secretary has failed to support his contention that any claims based on the letter of counseling are not properly before the court simply because Ms. Ellington first pursued the claims through the grievance process.  Accordingly, claims based on the April 2015 letter of counseling are considered below.

Because no claims based on age and color are properly before the court, race is the only discriminatory basis upon which Ms. Ellington may rely in support of her Title VII claims. Accordingly, the remainder of the analysis addresses whether a genuine dispute of fact exists as to Ms. Ellington's claims of discrimination based on race (Part II) and retaliation (Part III).

II.     Racial Discrimination

The Secretary is entitled to summary judgment with regard to Ms. Ellington's first three discrimination claims.  Ms. Ellington is unable to establish a prima facie case of discrimination based on her verbal warning and letter of counseling, her increased workload, or the denial of her

---

his union's grievance process did not prevent him from pursuing the remedies of Title VII." (internal quotation marks omitted)); *Martell v. Norton*, 242 F. Supp. 2d 652, 658 (D.N.D. 2003) ("[T]he pursuit of a claim through grievance under a collective bargaining agreement does not preclude a private civil suit under Title VII.").

[156] *Cf. Farley v. Leavitt*, No. CIV 05-1219 JB/LFC, 2007 U.S. Dist. LEXIS 98404, at *46 (D.N.M. Dec. 31, 2007) (unpublished) (finding the plaintiff "was obligated to fully exhaust her claims under the negotiated grievance procedure before seeking relief in district court"); *Martell*, 242 F. Supp. 2d at 658 (finding the plaintiff satisfied the "jurisdictional prerequisites of Title VII" where she first "exhausted her administrative remedies under the negotiated grievance procedures").  Nowhere does the Secretary claim Ms. Ellington failed to exhaust her administrative remedies under her union's grievance procedures.  Indeed, the Secretary represents Ms. Ellington's grievance "was fully pursued by the Union, fully investigated by Labor Relations, and defended by the Agency."  (MSJ 31, Doc. No. 23.)

leave request.  However, Ms. Ellington has shown disputes of material fact exist as to whether the October 2015 reassignment of her job duties and the January 2016 letter of reprimand were discriminatory under Title VII, and whether the Secretary's explanation for these events is pretextual.

Under Title VII, it is unlawful for an employer to discriminate against an employee because of her race.[157]  To prevail on a Title VII discrimination claim, the "plaintiff bears the ultimate burden of proving her employer intentionally discriminated against her."[158]  If a party relies on circumstantial evidence instead of presenting direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*[159] applies.[160] Under this framework, the plaintiff must establish a prima facie case of discrimination by demonstrating (1) she was a member of a protected class; (2) she suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination.[161]  If the plaintiff makes this showing, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions."[162]  If the employer

---

[157] *See* 42 U.S.C. § 2000e-2(a)(1).

[158] *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).

[159] 411 U.S. 792 (1973).

[160] *See Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019).  In her opposition, Ms. Ellington argues "[t]here should be enough justification to review and examine this case without [the] prima faci[e] requirement but with a burden shift production requirement."  (Opp'n 19, Doc. No. 27.)  However, Ms. Ellington's Title VII discrimination and retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework, which requires her to put on a prima facie case.

[161] *See Bennett*, 792 F.3d at 1266.

[162] *Id.*

does so, the burden shifts back "to the plaintiff to show that the defendant's explanation was merely pretextual."[163]

The Secretary first argues that although Ms. Ellington is a member of a protected class (race), she cannot establish she suffered an adverse employment action or that the action occurred under circumstances giving rise to an inference of discrimination.[164]  The Tenth Circuit "liberally defines the phrase adverse employment action," and takes a "case-by-case approach, examining the unique factors relevant to the situation at hand."[165]  Generally, an adverse employment action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[166]  Although "the term 'adverse employment action' is not necessarily limited to such acts,"[167] "[n]ot everything that makes an employee unhappy is an actionable adverse action."[168]  "Actions that have only a de minimis impact on an employee's

---

[163] *Id.*

[164] (MSJ 12, Doc. No. 23.)

[165] *Neri v. Bd. of Educ.*, 860 F. App'x 556, 565 (10th Cir. 2021) (unpublished) (internal quotation marks omitted) (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)).

[166] *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012)); *see also Brown v. Austin*, 13 F.4th 1079, 1092 (10th Cir. 2021) (citing *Equal Emp. Opportunity Comm'n v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011)).

[167] *Equal Emp. Opportunity Comm'n v. C.R. England, Inc.*, 644 F.3d at 1040 (internal quotation marks omitted).

[168] *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 604 (10th Cir. 2019) (unpublished) (citations omitted).

future opportunities are not adverse under Title VII."[169]  Likewise, a "'mere inconvenience or an alteration of job responsibilities' does not rise to the level of an adverse action."[170]

Because Ms. Ellington presents sufficient evidence to support a finding that the October 2015 reassignment of her job duties and the January 2016 letter of reprimand constitute adverse actions which occurred under circumstances giving rise to an inference of discrimination, as explained below, the court considers whether the Secretary offered legitimate, nondiscriminatory explanations for these events and whether Ms. Ellington showed these explanations were pretextual.  To determine pretext, the court considers whether the employer's "'stated reasons were held in good faith at the time of the [challenged action], even if they later prove to be untrue,' or whether its 'explanation was so weak, implausible, inconsistent, or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination.'"[171]  "Typically, a plaintiff will take one of three routes to establish pretext: '(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice.'"[172]

---

[169] *Alfonso v. SCC Pueblo Belmont Operating Co.*, 912 F. Supp. 2d 1018, 1029 (D. Utah 2012).

[170] *Id.* (quoting *Sanchez*, 164 F.3d at 532).

[171] *Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 595 (10th Cir. 2020) (unpublished) (alteration in original) (quoting *Simmons v. Sykes Enters.*, 647 F.3d 943, 947–48 (10th Cir. 2011)).

[172] *Id.* (alteration in original) (quoting *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

An assessment of Ms. Ellington's five claims of discrimination follows.

      *a.   Verbal Warning and Letter of Counseling (Discrimination Claim One)*

The Secretary is entitled to summary judgment on Ms. Ellington's first discrimination

claim because Ms. Ellington cannot establish a prima facie case.  Even viewing the undisputed

material facts in her favor, the verbal warning and letter of counseling Ms. Ellington received in

April 2015 do not constitute adverse employment actions.

A verbal warning, on its own, does not rise to the level of an adverse employment

action.[173]  And while written warnings may constitute adverse employment actions, they do so

only if they "effect[] a significant change in the plaintiff's employment status."[174]

The Secretary contends neither the April 2015 verbal warning nor letter of counseling

amount to adverse employment actions.  The Secretary argues the verbal warning "is not the type

of event that the law recognizes as an adverse employment action because it did not affect [Ms.]

Ellington's employment, benefits, pay, position, or employment status.[175]  And the Secretary

argues the letter of counseling is not an adverse employment action because (1) letters of

counseling are "specifically classified as non-disciplinary" under the Air Force's Master Labor

---

[173] *See Palmer v. Denver Health Med. Ctr.*, No. 05-cv-00082-WYD-MEH, 2007 U.S. Dist. LEXIS 32390, at *14 (D. Colo. Apr. 30, 2007) (unpublished) (finding a "verbal warning alone does not rise to the level of an adverse employment action").

[174] *Garcia v. Bd. of Regents of the Univ. of N.M.*, No. CIV 09-0203 RB/RHS, 2010 U.S. Dist. LEXIS 70585, at *16 (D.N.M. June 2, 2010) (unpublished) (quoting *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1224 (10th Cir. 2006)).

[175] (MSJ 13, Doc. No. 23.)

Agreement,[176] (2) Ms. Ellington's union determined the letter of counseling was a nondisciplinary action during the grievance process,[177] and (3) the letter had no effect on Ms. Ellington's employment status, benefits, pay, or position.[178]

While Ms. Ellington refutes the Secretary's overarching argument that she cannot prove a prima facie case,[179] she does so generally rather than addressing the elements of a prima facie case. For instance, Ms. Ellington does not address whether each instance of conduct giving rise to her discrimination claims constitutes an adverse employment action—she presents evidence for some events but overlooks others.

With respect to the verbal warning, Ms. Ellington does not dispute the Secretary's contention that it did not affect her employment benefits, pay, position, and status. As for the letter of counseling, Ms. Ellington does not dispute the Secretary's contention that the letter was nondisciplinary. But in an interrogatory response, Ms. Ellington attests the letter of counseling "obstructed [her] right to compete" for higher pay grades and diminished her "outstanding job

---

[176] (*Id.* at 14; *see also* Ex. H to MSJ, Master Labor Agreement, Article 5: Discipline & Counseling § 5.02, Doc. No. 24-7 (outlining the employer's responsibilities with respect to "nondisciplinary counselings").) The Secretary also argues the letter is not an adverse employment action because Air Force Policy 36-704 classifies a letter of counseling as a "nondisciplinary method of providing information, instruction, guidance, advice, assistance, or encouragement." (MSJ 14, Doc. No. 23.) However, the excerpt of Policy 36-704 submitted as evidence does not include the quoted language. (*See* Ex. I to MSJ, Air Force Policy 36-704, Doc. No. 24-8.)

[177] (MSJ 14, Doc. No. 23; *see also* Ex. Y to MSJ, Step 1 Grievance Denial ¶¶ 4.b.–c., Doc. No. 25-10; Ex. Z to MSJ, Step 2 Grievance Denial ¶ 4, Doc. No. 25-11.)

[178] (MSJ 14, Doc. No. 23.)

[179] (*See* Opp'n 6, Doc. No. 27.)

performance record and reputation."[180]  While situations "that carry a significant risk of

humiliation, damage to reputation, and a concomitant harm to future employment prospects"

may amount to adverse employment actions,[181] a "formal criticism"—like a letter of

counseling—is "not necessarily [an] adverse action[] and [] should not be considered [as] such if

[it] did not affect the employee's grade or salary."[182]

Here, nothing in the record indicates the letter of counseling resulted in demotion, change

in pay, or modification of Ms. Ellington's job responsibilities.  Further, Ms. Ellington does not

dispute the letter of counseling was nondisciplinary—a fact which mitigates the risk of

significant humiliation, damage to reputation, or harm to future employment prospects.

Accordingly, Ms. Ellington's interrogatory response, taken alone, is insufficient to establish the

letter of counseling significantly affected her employment status.

In sum, where Ms. Ellington has failed to identify any evidence establishing the verbal

warning was an adverse employment action, and where she has failed to identify sufficient

evidence establishing the letter of counseling was an adverse employment action, Ms. Ellington

cannot show a prima facie case of discrimination based on either of these events, and the

Secretary is entitled to summary judgment on this claim.

---

[180] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 38, Doc. No. 27-13.)

[181] *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032 (10th Cir. 2004) (internal quotation marks omitted).

[182] *Garcia*, 2010 U.S. Dist. LEXIS 70585, at *16–17 (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)) (holding a letter of counseling had no effect on plaintiff's employment status where she continued working in the same position, her salary was unchanged, and her job responsibilities were not significantly modified).

### b. Increase in Workload (Discrimination Claim Two)

The Secretary is entitled to summary judgment on Ms. Ellington's second discrimination claim because Ms. Ellington cannot establish a prima facie case as to this claim.  Even viewing the undisputed material facts in her favor, Ms. Ellington's increased workload in July 2015 does not constitute an adverse employment action.

The Tenth Circuit has held an "increased workload might constitute an adverse employment action in some circumstances."[183]  However, generalized and unsubstantiated claims on this point are insufficient to survive the summary judgment stage.[184]  The "key inquiry is whether the increased workload was accompanied by a significant change in duties, responsibilities, or working conditions."[185]

The Secretary argues the reassignment of fifty-seven purchase requests from a prior coworker to Ms. Ellington does not constitute an adverse employment action because it did not change Ms. Ellington's benefits, pay, or position.[186]  The Secretary also presented evidence, including declarations from Ms. Creacy and Mr. Fry, supporting the premise that Ms. Ellington's increased workload was "purely a matter of a supervisor assigning duties as appropriate to get

---

[183] *Humbles v. Principi*, 141 F. App'x 709, 711–12 (10th Cir. 2005) (unpublished) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1269–70 (10th Cir. 2003)); *see also Dial v. McDonough*, No. 21-01071-KHV-ADM, 2022 U.S. Dist. LEXIS 216147, at *27 (D. Kan. Nov. 29, 2022) (unpublished).

[184] *See Dial*, 2022 U.S. Dist. LEXIS 216147, at *27 (citing *Jones*, 349 F.3d at 1269–70).

[185] *Id.* (internal quotation marks omitted).

[186] (MSJ 15, Doc. No. 23.)

the mission accomplished"[187] and "to allow all of the financial workload to stay afloat" in light of an "ongoing manpower shortage."[188]  The work was given to Ms. Ellington, specifically, because she had "the most tenure in the office."[189]  Ms. Creacy averred this increased workload was temporary and did not require "Ms. Ellington to perform any steps that she wasn't already having to do" as part of her preexisting duties.[190]

Ms. Ellington does not address whether this increased workload constitutes an adverse employment action.  But she does not dispute the Secretary's contention that her employment benefits, pay, position, and status were unaffected by it.  Likewise, she does not dispute that this additional workload was only temporary or that it required the same tasks as her preexisting duties.

Where Ms. Ellington has otherwise failed to identify any evidence showing the increased workload was an adverse employment action, she cannot establish a prima facie case of discrimination based on this event.  Accordingly, the Secretary is entitled to summary judgment on this claim.

c.   *Denial of Leave (Discrimination Claim Three)*

The Secretary is entitled to summary judgment on Ms. Ellington's third discrimination claim because Ms. Ellington cannot establish a prima facie case as to this claim.  Even viewing the undisputed material facts in her favor, Ms. Creacy's denial of Ms. Ellington's unplanned

---

[187] (Ex. O to MSJ, Fry Decl. Q&A 49, Doc. No. 24-14 at 8.)

[188] (Ex. B to MSJ, Creacy Decl. Q&A 46, 53, Doc. No. 24-1 at 11, 13.)

[189] (Ex. O to MSJ, Fry Decl. Q&A 57, Doc. No. 24-14.)

[190] (Ex. B to MSJ, Creacy Decl. Q&A 46, Doc. No. 24-1 at 11.)

leave request does not constitute an adverse employment action.  (While the parties dispute whether Ms. Ellington was denied leave in the first place,[191] the court construes the facts in the light most favorable to Ms. Ellington and assumes, for purposes of this order, that she was denied leave.)

On July 20, 2015, Ms. Ellington requested unplanned leave for July 24, 2015 and July 30, 2015.[192]  Ms. Creacy declined to approve it, out of concern that Ms. Ellington would be unable to meet her deadlines.[193]  The Secretary argues this was not an adverse employment action because it "did not affect [Ms.] Ellington's employment status in any significant way."[194]  Ms. Ellington contends it "caused [her] to cancel one personal appointment and a special

---

[191] The Secretary submitted declarations supporting the proposition that "it was left to Ms. Ellington to complete her taskings before a final decision regarding her leave requests would be made" and that "leave was never denied."  (Ex. B to MSJ, Creacy Decl. Q&A 60–61, Doc. No. 24-1 at 14; *see also* Ex. O to MSJ, Fry Decl. Q&A 59, Doc. No. 24-14 at 11.)  The Secretary contends Ms. Creacy merely "stated [] she was hesitant to approve [Ms.] Ellington's request for [] two days of unplanned leave unless [Ms.] Ellington could assure [her] that she would meet coming deadlines."  (MSJ 17, Doc. No. 23.)  Ms. Ellington presented contrary evidence in the form of email communications between her and Ms. Creacy, which Ms. Ellington interpreted as a denial of her leave request.  (*See* Ex. K to Opp'n, Email Commc'ns between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 21, 2015 12:01 pm), Doc. No. 27-11 at 2–3; *see also* Ex. M to Opp'n, Pl.'s Interrog. Resps. 9, Doc. No. 27-13; Ex. F to MSJ, Ellington Decl. Q&A 78, Doc. No. 24-5 ("Ms. Creacy also called me into her office and told me she would not approve my leave.").)

[192] (MSJ, SMF ¶ 19, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 59, Doc. No. 24-1 at 14.)  Although Ms. Ellington requested leave for two different dates (July 24 and July 30), she made the request on the same day, and Ms. Creacy addressed it as one request.

[193] (Ex. S to MSJ, Email Commc'n between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 21, 2015 12:01 pm), Doc. No. 25-4; Ex. K to Opp'n, Email Commc'n between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 24, 2015 5:04 pm), Doc. No. 27-11.)

[194] (MSJ 17, Doc. No. 23.)

engagement," and caused "mental anguish" and a decline of her morale.[195]  But Ms. Ellington does not address whether her denial of leave constitutes an adverse employment action, nor does she dispute the Secretary's contention that the denial did not affect her employment status.

Although the Tenth Circuit has not explicitly stated whether denial of leave constitutes an adverse employment action, other circuits have found it does, under certain circumstances.[196] The Fifth Circuit, for example, distinguishes between "decisions denying an employee's right to take leave or the amount of leave available and [] decisions affecting the specific date, time, and manner that leave is taken"—finding only the former constitutes an adverse employment action because one-time denials of leave are not "ultimate employment decision[s]."[197]  Evaluating this under the Tenth Circuit's case-by-case approach,[198] denial of leave could only be considered adverse if it had "a significant impact on the plaintiff's employment status or benefits."[199]

Ms. Creacy's denial of Ms. Ellington's unplanned leave request was a discrete, isolated occurrence.  Although it impacted Ms. Ellington's ability to attend a doctor's appointment and

---

[195] (Ex. F to MSJ, Ellington Decl. Q&A 73, Doc. No. 24-5.)

[196] *See, e.g.*, *McElroy v. PHM Corp.*, 622 F. App'x 388, 389 (5th Cir. 2015) (unpublished) ("Adverse employment actions include only ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." (internal quotation marks omitted)).

[197] *Id.* at 391.  Courts in the Tenth Circuit have hinted at this same distinction, finding one-time denials of leave "too trivial to rise to the level of adverse employment action."  *Dunlap v. Kan.*, 211 F. Supp. 2d 1334, 1343 (D. Kan. 2002).

[198] *See Neri*, 860 F. App'x at 565 (citing *Sanchez*, 164 F.3d at 532).

[199] *Dunlap*, 211 F. Supp. 2d at 1342 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

led to cancellation of her birthday plans,[200] this decision affected only the manner and date of Ms. Ellington's leave, not her overall right to take leave or the amount of leave she had available. Accordingly, the denial of Ms. Ellington's unplanned leave request did not significantly impact her employment status or benefits and does not constitute an adverse employment action.

Where Ms. Ellington cannot establish a prima facie case of discrimination based on this event, the Secretary is entitled to summary judgment on this claim.

### d.   Reassignment of Duties (Discrimination Claim Four)

Ms. Ellington raises genuine disputes of material fact with regard to her fourth discrimination claim such that the Secretary's motion for summary judgment must be denied as to this claim.  Specifically, Ms. Ellington disputes whether the October 2015 reassignment of her duties constitutes an adverse employment action giving rise to an inference of discrimination and whether the Secretary's explanation for this action is pretextual.

### i.   Prima Facie Case

Where Ms. Ellington submitted evidence indicating the reassignment of major job duties negatively impacted her career potential, she has raised disputes of material fact as to whether it constitutes an adverse employment action.  "[R]eassignment of job duties is not automatically actionable."[201]  "Whether a particular reassignment is materially adverse depends upon the

---

[200] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 45–46, Doc. No. 27-13.)

[201] *Daniels v. United Parcel Serv.*, 701 F.3d 620, 635 (10th Cir. 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006)).

circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."[202]

The Secretary contends "[t]he reassignment of work among department employees—and reassignments of work to [Ms.] Ellington in particular—do[] not constitute adverse employment actions" because Ms. Ellington's work remained "within her position description and grade."[203] The Secretary supports this claim with declarations from Ms. Creacy and Mr. Fry.[204]  According to Ms. Creacy, "[n]one of Ms. Ellington's major graded duties were removed," and while Ms. Ellington's workload was "reduced from 2 divisions down to 1," the tasks performed "remain[ed] complex" and "scored within [her] grade level as well as within the confines of her [position description] and performance plan."[205]  Mr. Fry's declaration states, "the realignment of duties was all commensurate with grades and expectations."[206]  Mr. Fry denied Ms. Ellington "was assigned menial duties and responsibilities," explaining "[s]he [was] still a GS-11 [and was] assigned commensurate duties."[207]

However, in a declaration supporting her EEO complaint, Ms. Ellington asserted otherwise:

---

[202] *Id.*

[203] (MSJ 15, Doc. No. 23; *see also* Ex. B to MSJ, Creacy Decl. Q&A 74, 77, 80, Doc. No. 24-1 at 17–19; Ex. O to MSJ, Fry Decl. Q&A 67, Doc. No. 24-14 at 13.)

[204] (*See generally* Ex. B to MSJ, Creacy Decl., Doc. No. 24-1; Ex. O to MSJ, Fry Decl., Doc. No. 24-14.)

[205] (Ex. B to MSJ, Creacy Decl. Q&A 74, 77, 80, Doc. No. 24-1 at 17–19.)

[206] (Ex. O to MSJ, Fry Decl. Q&A 67, Doc. No. 24-14 at 13.)

[207] (*Id.* at Q&A 75, 76, Doc. No. 24-1 at 14.)

> Ms. Creacy has published a plan to rotate everyone's major duties and responsibilities.  However, I am the only one that has been assigned menial duties and responsibilities.  My major duties and responsibilities as the 75 CES budget analyst were taken from me and given to Ms. Baughman who was a GS-7 with GS-9 potential promotion. . . . This plan to reassign the 75 Civil Engineer Squadron CES budget analyst duties and responsibilities to an employee that is in a duty position of which is now two grades lower than my GS-11 position will have created an adverse effect on me."[208]

Ms. Ellington's interrogatory responses are consistent with this statement.[209]  Ms. Ellington also submitted interrogatory responses and an email outlining her opposition to Ms. Creacy's reassignment plan and explaining why specific duties were inappropriate for certain employees.[210]  Ms. Ellington asserts this reassignment of duties and responsibilities "was a specious way to demote [her] and subjected [her] to a skill-level reduction that debilitated [her] competitive posture for promotion and educational opportunities," "affected [her] job security," and "derailed [her] professional career goals."[211]  Where there is no dispute Ms. Ellington's job duties were altered and her workload was significantly reduced, considering the evidence in the light most favorable to Ms. Ellington, she has raised a genuine dispute of fact as to whether the reassignment of her duties was an adverse employment action.

Ms. Ellington has also raised genuine disputes of material fact as to whether her major duties were reassigned under circumstances giving rise to an inference of discrimination.  A

---

[208] (Ex. F to MSJ, Ellington Decl. Q&A 62, Doc. No. 24-5.)  Earlier in the declaration, Ms. Ellington describes Ms. Baughman as a "white female."  (*Id.* at Q&A 59.)

[209] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 18–19, Doc. No. 27-13.)

[210] (*See id.* at 28; Ex. F to Opp'n, Email from Marvie Ellington to Amanda Creacy (Aug. 7, 2015), Doc. No. 27-6.)

[211] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 36, 46, Doc. No. 27-13.)

plaintiff may satisfy this prong of the prima facie case in "various ways, such as [pointing to] 'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to [the challenged action].'"[212]

The Secretary contends there was no "inference of discrimination in the way [] assignments were made" in October 2015.[213]  He presented evidence that the reassignments were made "commensurate with [pay] grades and expectations"[214] while also furthering a cross training initiative aimed at employee development, diversification, and maintaining mission continuity in the event of additional staff turnover.[215]  In addition, Ms. Creacy attested "the entire team received new duties in order to lighten the large amounts of workload" including "Caucasian, Korean, and Black" employees.[216]  But Ms. Ellington presented evidence to the contrary in the form of interrogatory responses indicating:

> Ms. Creacy published (July 2015) and executed (October 2015) a plan to balance workload that (a) without proper authority reassigned my merited position duties and responsibilities to two white females under the age of 40 and (b) diminished my gainful employment to an assigned [sic] that belongs to employees without the

---

[212] *Whitaker v. Azar*, No. 18-1046 KG/JFR, 2021 U.S. Dist. LEXIS 52642, at *23 (D.N.M. Mar. 19, 2021) (unpublished) (quoting *Barlow v. C. R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)).

[213] (MSJ 16, Doc. No. 23.)

[214] (Ex. O to MSJ, Fry Decl. Q&A 67, Doc. No. 24-14 at 13.)

[215] (*See* Ex. O to MSJ, Fry Decl. Q&A 67, 75, Doc. No. 24-14 at 13–14; Ex. B to MSJ, Creacy Decl. Q&A 69, 73, Doc. No. 24-1 at 16–17.)

[216] (Ex. B to MSJ, Creacy Decl. Q&A 70, Doc. No. 24-1 at 17; *see also* Ex. O to MSJ, Fry Decl. Q&A 74, Doc. No. 24-14 at 14 (stating "[t]he entire staff had their workloads changed").)

adequate knowledge, skills, and abilities. In essence, Ms. Creacy granted preference and gave an advantage to two white females under the age of 40.[217]

Considering the evidence in the light most favorable to Ms. Ellington, she has raised a genuine dispute of fact as to whether the reassignment of her duties occurred under circumstances giving rise to an inference of discrimination. Accordingly, Ms. Ellington has presented evidence sufficient to support a prima facie case of discrimination as to this event.

### ii. Legitimate Nondiscriminatory Reasons and Pretext

Ms. Ellington has also raised a genuine dispute of material fact regarding whether the Secretary's explanation for the reassignment of her major duties is pretextual. "Typically, a plaintiff will take one of three routes to establish pretext: '(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice.'"[218]

The Secretary contends the reassignment was nondiscriminatory and justified by restructuring needs.[219] He maintains the evidence shows all work assignments were frequently realigned during the period of restructuring and staff turnover,[220] and every department

---

[217] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 38, Doc. No. 27-13; *see also id.* at 18, 27 (stating "Ms. Creacy designed a plan with intentional activities to manipulate the merit promotion system and with the purpose to give two white females an illegal advantage for future promotions" and the reassignment plan was executed "so that the white females could benefit from [] higher-level classification").)

[218] *Mann*, 819 F. App'x at 595 (alteration in original) (quoting *Kendrick*, 220 F.3d at 1230).

[219] (*See* MSJ 20–21, Doc. No. 23.)

[220] (*See* Ex. B to MSJ, Creacy Decl. Q&A 69, Doc. No. 24-1 at 16–17.)

employee was affected by the reassignment plan.[221]   According to the Secretary, Ms. Creacy and

Mr. Fry "made great efforts to balance the work among the department [and] assign work fairly

and according to grade level."[222]

      Ms. Ellington contends these reasons are pretextual.   In her interrogatory responses, Ms.

Ellington asserts the reassignment of her duties was an "intentional activit[y] to manipulate the

merit promotion system [] with the purpose [of] giv[ing] two white females an illegal advantage

for future promotions."[223]   Ms. Ellington also presents evidence that Ms. Creacy acted contrary

to a written policy:

> Ms. Creacy, as a supervisor[], was required to adhere to Air Force Instruction
> 36-1401, 1 August 1997, . . . she also violated section 3.5.2. [which] "[r]equire[s]
> supervisors and manage[r]s to . . . []promptly report changes in major duties and
> responsibilities to the servicing manpower and personnel offices as they occur[]."
> In essence, Ms. Creacy developed a decisive plan, as disingenuous, to remove my
> major duties and responsibilities to another employee without proper authority.[224]

---

[221] (*See id.* at Q&A 70, Doc. No. 24-1 at 17; Ex. O to MSJ, Fry Decl. Q&A 74, Doc. No. 24-14 at 14.)

[222] (MSJ 20–21, Doc. No. 23; *see also* Ex. B to MSJ, Creacy Decl. Q&A 69, 73, 79, Doc. No. 24-1 at 16–19; Ex. O to MSJ, Fry Decl. Q&A 67, 75, Doc. No. 24-14 at 13–14.)   The Secretary also asserted Ms. Ellington's duties were revised in October 2015 in an attempt to address her prior complaints about being overworked.   (*See* Ex. B to MSJ, Creacy Decl. Q&A 76, Doc. No. 24-1 at 18.)   Ms. Ellington does not address this proffered explanation.   However, this does not undermine Ms. Ellington's evidence of pretext.   *See Carter v. Mineta*, 125 F. App'x 231, 235 (10th Cir. 2005) (unpublished) ("Summary judgment at [the pretext stage] [is] 'warranted only if [Plaintiff] . . . fail[s] to produce any evidence from which a reasonable inference could be drawn that [Defendant's] proffered reasons [are] pretextual." (third and fifth alteration in original) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003))).

[223] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 18, Doc. No. 27-13; *see also id.* at 19 (stating the October 2015 reassignments were "a specious plan to promote two white females under the age of 40 and demote me a black female over the age of 40").)

[224] (*Id.* at 29.)

44

Considering the evidence in the light most favorable to Ms. Ellington, this is sufficient to establish a genuine dispute of fact as to pretext for the reassignment of her duties.  Accordingly, the Secretary is not entitled to summary judgment on this claim.

### e.  Letter of Reprimand (Discrimination Claim Five)

Ms. Ellington raises genuine disputes of material fact with regard to her fifth discrimination claim such that the Secretary's motion for summary judgment must be denied as to this claim.  Specifically, Ms. Ellington raises disputes as to whether the January 2016 letter of reprimand constitutes an adverse employment action giving rise to an inference of discrimination and whether the Secretary's explanation for this action is pretextual.

### i.  Prima Facie Case

Ms. Ellington's assertion that the letter of reprimand impaired her career advancement is sufficient to raise genuine disputes as whether it constitutes an adverse employment action. Although a letter of reprimand, alone, is not enough to constitute an adverse employment action,[225] situations "that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" can amount to adverse employment actions.[226]  In particular, harm to future employment prospects "strongly indicates a challenged action is an adverse employment action."[227]

---

[225] *Dunlap v. Kan. Dep't of Health & Env't*, 127 F. App'x 433, 437 (10th Cir. 2005) (unpublished) (confirming a letter of reprimand alone is not an adverse employment action).

[226] *Hillig*, 381 F.3d at 1032 (internal quotation marks omitted).

[227] *Id.* at 1031 (internal quotation marks omitted).

The Secretary contends the letter of reprimand Ms. Ellington received "does not meet the standard of an adverse employment action because it did not include a loss of pay, suspension, or change of position, or any other consequence."[228]  The Secretary argues the fact that "documentation of the reprimand would remain in [Ms.] Ellington's file for two years and could be built upon, should her conduct require further discipline in the meantime" is of no moment because "it had no detrimental effect on her employment as long as she continued her employment as expected without further inappropriate behavior."[229]

But Ms. Ellington asserts the letter of reprimand harmed her future prospects.  In her interrogatory responses, Ms. Ellington attests the reprimand "debilitate[d] . . . [her] possibilit[y] for advancement in the federal government,"[230] and "subjected [her] to a definite loss of career advancement . . . derailed [her] career and impeded [her] ability to achieve the grade of GS-12."[231]

Unlike the letter of counseling discussed above, the letter of reprimand *was* a disciplinary action,[232] meaning it carried an inherent risk of impacting Ms. Ellington's employment status. The Secretary's own statements illustrate the possibility of detrimental effects on Ms. Ellington's

---

[228] (MSJ 18, Doc. No. 23; *see also generally* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[229] (MSJ 18–19, Doc. No. 23; *see also* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016) ¶ 3, Doc. No. 25-7.).)

[230] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 38, Doc. No. 27-13.)

[231] (*Id.* at 36, 46.)

[232] (*See generally* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

future employment should she engage in "further inappropriate behavior"[233]—something she disputes having done in the first place.[234]  Considering the evidence in the light most favorable to Ms. Ellington, she has raised a genuine dispute of fact as to whether the letter of reprimand was an adverse employment action.

Ms. Ellington has also established a dispute of material fact as to whether the letter of reprimand was issued under circumstances giving rise to an inference of discrimination.  The Secretary contends "there is no evidence to support an inference of discrimination regarding the reprimand's issuance" because it "was based on repeated incidents of [Ms.] Ellington's inappropriate, unprofessional, and disruptive behavior that were documented by multiple witnesses."[235]  According to the Secretary, Ms. Creacy issued the reprimand, "in accordance with and pursuant to Air Force policy."[236]

Ms. Ellington presented contrary evidence in the form of interrogatory responses, noting that while the letter of reprimand subjected her to a "definite loss of career advancement," it

---

[233] (*See* MSJ 18–19, Doc. No. 23; *see also* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016) ¶ 3, Doc. No. 25-7.)

[234] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 31–34, Doc. No. 27-13; Ex. O to Opp'n, Resp. to Notice of Reprimand (Dec. 11, 2015), Doc. No. 27-15.)

[235] (MSJ 19, Doc. No. 23; *see also* Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6.)  The Secretary also contends that under Air Force policy and union rules, Ms. Creacy acted leniently because she "had the option in this circumstance to issue a disciplinary action ranging from a reprimand, on the most lenient side, to a five-day suspension, on the most serious side."  (MSJ 19, Doc. No. 23 (citing Ex. W to MSJ, Decl. of Kimberly Fuit Q&A 18, Doc. No. 25-8).)  But the Secretary provides no legal authority establishing the relevance of this choice.

[236] (MSJ 19, Doc. No. 23; *see also* Ex. W to MSJ, Fuit Decl. Q&A 18, Doc. No. 25-8); Ex. O to MSJ, Fry Decl. Q&A 20–23, Doc. No. 24-14 at 21; Ex. B to MSJ, Creacy Decl. Q&A 17, 21, Doc. No. 24-1 at 27–28.)

facilitated the promotion of "two white females and set up venue to accelerate a career progression" for them.[237]  Thus, she alleges "preferential treatment given to employees outside the protected class."[238]

Considering the evidence in the light most favorable to Ms. Ellington, she has raised a genuine dispute of fact as to whether the letter of reprimand was issued under circumstances giving rise to an inference of discrimination.  Accordingly, Ms. Ellington has presented evidence sufficient to support a prima facie case of discrimination as to this event.

### ii.  Legitimate Nondiscriminatory Reasons and Pretext

Ms. Ellington raises a genuine dispute of material fact regarding whether the Secretary's explanation for the letter of reprimand is pretextual.

The Secretary contends the letter of reprimand was issued in accordance with Air Force policy as a result of Ms. Ellington's repeated inappropriate behavior in the workplace and was not "due in any part to her protected classes."[239]  The Secretary also argues Ms. Creacy followed Air Force policies, including giving Ms. Ellington notice of her intent to issue the reprimand, and

---

[237] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 36, Doc. No. 27-13.)

[238] *Whitaker*, 2021 U.S. Dist. LEXIS 52642, at *23 (quoting *Barlow*, 703 F.3d at 505).

[239] (MSJ 21, Doc. No. 23; *see also* Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6; Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)  According to the Secretary, Ms. Creacy chose the least severe disciplinary action after consulting with the human resources manager.  (MSJ 21, Doc. No. 23; *see also* Ex. W to MSJ, Fuit Decl. Q&A 18, Doc. No. 25-8.)  But the Secretary provides no legal authority establishing this is relevant.

48

a chance for Ms. Ellington and the union to respond before deciding to issue the letter of reprimand.[240]

Ms. Ellington asserts that this explanation is pretextual. She claims the letter of reprimand was a pretext for Ms. Creacy's belief that "[she], a black woman . . . should not question [Ms. Creacy's] authority."[241] According to Ms. Ellington, the letter of reprimand was in response to the fact that she disagreed with Ms. Creacy's policy regarding the government purchase card program and not because any of her actions were inappropriate.[242] In other words, Ms. Creacy asserts the "stated reason for the adverse employment action was false."[243] Considering the evidence in the light most favorable to Ms. Ellington, this is sufficient to establish a genuine dispute of fact as to pretext for the letter of reprimand. Accordingly, the Secretary is not entitled to summary judgment as to Ms. Ellington's claim of discrimination based on this event.

In sum, Ms. Ellington cannot establish a prima facie case of discrimination with respect to the April 2015 verbal warning and letter of counseling, her increased workload, or the denial of her leave request. Accordingly, the Secretary is entitled to summary judgment on discrimination claims based on those events. However, Ms. Ellington has raised genuine

---

[240] (MSJ 21, Doc. No. 23; *see also* Ex. W to MSJ, Fuit Decl. Q&A 18, Doc. No. 25-8; Ex. O to MSJ, Fry Decl. Q&A 21–24, Doc. No. 24-14 at 21; Ex. B to MSJ, Creacy Decl. Q&A 23–25, Doc. No. 24-1 at 28–29.)

[241] (*See* Ex. M to MSJ, EEOC Appeal Dec. 5, Doc. No. 24-12.)

[242] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 31–34, Doc. No. 27-13.)

[243] *Mann*, 819 F. App'x at 595 (quoting *Kendrick*, 220 F.3d at 1230).

disputes of material fact as to whether the October 2015 reassignment of duties and the January 2016 letter of reprimand constitute discrimination, and whether the Secretary's explanation for these events is pretext for discrimination.

III.     Retaliation

The Secretary is entitled to summary judgment with regard to Ms. Ellington's first four retaliation claims.  Ms. Ellington is unable to establish a prima facie case of retaliation based on her verbal warning and letter of counseling, her increased workload, the denial of her leave request, or the October 2015 reassignment of duties.  However, Ms. Ellington has shown genuine disputes of material fact as to her fifth relation claim, based on the letter of reprimand.  Ms. Ellington has raised disputes as to whether the letter of reprimand constitutes retaliation for engaging in protected activity and whether the Secretary's explanation for that action is pretextual.

Federal law prohibits retaliation against an employee for opposing any practice made unlawful by Title VII, or for participating in any stage of administrative or judicial proceedings under Title VII.[244]  Like claims of discrimination, claims of retaliation based on indirect evidence are subject to the three-part burden-shifting framework established in *McDonnell Douglas*.[245]  To establish a prima facie case of retaliation, Ms. Ellington must establish: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found

---

[244] *See* 42 U.S.C. § 2000e-3(a); 29 C.F.R. § 1614.101(b); *see also Brown v. Titan Prot. & Consulting*, No. 21-3122, 2022 U.S. App. LEXIS 9076, at *5–6 (10th Cir. April 5, 2022) (unpublished).

[245] *See Brown*, 2022 U.S. App. LEXIS 9076, at *5–6.

the challenged action materially adverse; and (3) a causal connection between her protected

opposition and the employer's adverse action.[246]

     The Secretary argues Ms. Ellington cannot establish a prima facie case of retaliation.[247]

However, it is undisputed that Ms. Ellington has a history of engaging in protected activity.[248]

As explained above, two instances of protected activity are considered for purposes of Ms.

Ellington's retaliation claims: (1) a formal EEO complaint she filed on May 14, 2014,[249] and (2)

a formal EEO complaint she filed on July 27, 2015.[250]   Because there is no question Ms.

Ellington engaged in protected activity, the first element of her prima facie case of retaliation is

satisfied.   Whether a reasonable employee would have found the challenged action materially

adverse and whether a causal connection exists between Ms. Ellington's protected activity and

the adverse action are discussed below in the context of the individual events giving rise to Ms.

Ellington's retaliation claims.

---

[246] *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (articulating these prima facie elements for retaliation claims under Title VII).

[247] (*See* MSJ 22–23, Doc. No. 23.)

[248] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 40–43, Doc. No. 27-13 (recounting her history of EEO complaints).)

[249] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 42, Doc. No. 27-13 (EEO complaint number 8L1M14022).)

[250] (Ex. J to MSJ, Formal EEO Compl. (July 27, 2015), Doc. No. 24-9; Ex. K to MSJ, EEO Final Agency Dec. 3, Doc. No. 24-10 (outlining the timeline for this claim starting with informal EEO counseling and ending with filing a formal complaint).)   As explained in the "relevant facts" section of this order, the May 2014 and July 2015 events constitute Ms. Ellington's most recent protected activities.   Further, she relies on the May 2014 complaint to support her retaliation claims and the July 2015 complaint encompasses the events supporting her other claims.

To show a reasonable employee would have found the challenged action materially adverse, a plaintiff need not prove "adverse employment action was taken against her, as that phrase has been construed in Title VII discrimination cases."[251]  "Rather the plaintiff must show that a reasonable employee would have found the action materially adverse such that they might be dissuaded from making a charge of discrimination."[252]  "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient.[253]

Next, Ms. Ellington must show a causal connection between her protected activity and the challenged materially adverse actions.  To establish a causal connection, a plaintiff "must present evidence of circumstances that justify an inference of retaliatory motive."[254]  This "element of a prima facie case of retaliation requires knowledge by the employer of the employee's protected activity."[255]  When protected conduct is followed closely by the adverse action, "courts [] often infer[] a causal connection."[256]  Temporal proximity is important: "a three-month gap between protected activity and an adverse action is too long to support an

---

[251] *Faragalla v. Douglas Cnty. Sch. Dist.*, 411 F. App'x 140, 149 (10th Cir. 2011) (unpublished) (internal quotation marks omitted).

[252] *Id.*

[253] *Juarez v. Utah*, 263 F. App'x 726, 736 (10th Cir. 2008) (unpublished).

[254] *Laul v. Los Alamos Nat'l Labs.*, 765 F. App'x 434, 441 (10th Cir. 2019) (unpublished) (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).

[255] *Hamilton v. Matrix Logistics, Inc.*, No. 05-cv-00757-LTB-CBS, 2007 U.S. Dist. LEXIS 2638, at *18 (D. Colo. Jan. 12, 2007) (unpublished) (citing *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)).

[256] *Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019).

inference of causation on its own." [257]  In other words, "where a gap of three months or longer

has occurred, a plaintiff must present other evidence—more than mere speculation, conjecture,

or surmise—to establish that her protected activity was a but-for cause of the adverse

employment action."[258]

Ms. Ellington fails to demonstrate the verbal warning and letter of counseling, increased

workload, denial of her leave request, or October 2015 reassignment of duties were materially

adverse actions casually connected to her protected activity.  But Ms. Ellington presents

evidence to support a finding that the January 2016 letter of reprimand was a materially adverse

action causally connected to her protected activity, and that material disputes exist as to whether

the Secretary's explanations for these events are pretextual.

An assessment of Ms. Ellington's five claims of retaliation follows.

### a.   Verbal Warning and Letter of Counseling (Retaliation Claim One)

The Secretary is entitled to summary judgment on Ms. Ellington's first retaliation claim

because Ms. Ellington cannot establish a prima facie case as to this claim. An informal verbal

warning, on its own, does not "rise to the level of a materially adverse employment action

sufficient to satisfy the second prong of the prima facie retaliation case."[259]  "The threat of being

written up for insubordination is not enough to establish an adverse employment action" for

---

[257] *Id.*

[258] *Id.* (citations and internal quotation marks omitted).

[259] *Carter v. Meridian Auto. Sys.*, 368 F. Supp. 2d 1130, 1142 n.7 (D. Kan. 2004).

purposes of a retaliation claim.[260]  Additionally, "[a] counseling letter, without attendant effects on employment, is not a materially adverse action."[261]

The Secretary contends the verbal warning and letter of counseling were nondisciplinary acts with "no adverse impact on Ellington's employment" and "no negative effects."[262]  Ms. Ellington's opposition contains no argument addressing whether the verbal warning constitutes a materially adverse action and identifies no evidence showing it negatively impacted her employment.  Additionally, Ms. Ellington does not dispute the Secretary's contention that the verbal warning and letter of counseling were nondisciplinary actions.

Although Ms. Ellington attests in an interrogatory response that the letter of counseling "obstructed [her] right to compete" for higher pay grades and diminished her "outstanding job performance record and reputation,"[263] she provides no support for this outside her own statements.  In *Garcia v. Board of Regents of the University of New Mexico*,[264] the District of New Mexico addressed a similar scenario.  In *Garcia*, the plaintiff claimed a letter of counseling "might interfere with future employment prospects."[265]  But the court concluded the letter simply

---

[260] *West v. Norton*, 376 F. Supp. 2d 1105, 1125 (D.N.M. 2004) (citation omitted).

[261] *Garcia*, 2010 U.S. Dist. LEXIS 70585, at *24 (citing *Cochise v. Salazar*, 601 F. Supp. 2d 196, 201 (D.D.C. 2009)) (applying the same standards which govern retaliation claims under Title VII to a retaliation claim brought under the Family Medical Leave Act).

[262] (MSJ 24, Doc. No. 23.)

[263] (Ex. M to Opp'n, Pl.'s Interrog. Resps. 38, Doc. No. 27-13.)

[264] 2010 U.S. Dist. LEXIS 70585.

[265] *Id.* at *24.

"imposed requirements to improve attendance and job performance."[266]  The court declined to find it materially adverse where the plaintiff presented "no evidence that she suffered any materially adverse consequences as a result of the letter" outside her own statements.[267]

Here, the letter of counseling similarly served only to "remind [Ms. Ellington] of [her] responsibilities as a [f]ederal employee" and to "stress the importance of behaving in a professional manner."[268]  Beyond Ms. Ellington's interrogatory response, nothing in the record indicates the letter negatively impacted Ms. Ellington's employment.  As in *Garcia*, Ms. Ellington's statement, taken alone, is insufficient to establish the letter of counseling was a materially adverse action.

In sum, there is no reason to believe either the verbal warning or the letter of counseling would have dissuaded a reasonable person from engaging in protected activity under Title VII.  Accordingly, Ms. Ellington cannot establish a prima facie case of retaliation based on these events, and the Secretary is entitled to summary judgment on this claim.

### b.  Increase in Workload (Retaliation Claim Two)

The Secretary is entitled to summary judgment on Ms. Ellington's second retaliation claim because Ms. Ellington cannot establish a prima facie case as to this claim.  Ms. Ellington has not established the increased workload constitutes a sufficiently serious injury.  "'Title VII

---

[266] *Id.*

[267] *See id.*

[268] (Ex. G to MSJ, Letter of Counseling from Amanda Creacy to Marvie Ellington (Apr. 23, 2015) ¶ 1, Doc. No. 24-6.)

protects individuals not from all retaliation but only from retaliation that produces an injury or harm.'  This requires injury rising to a 'requisite level of seriousness.'"[269]

The Secretary contends Ms. Ellington's increased workload in June 2015 is not a materially adverse action because it was temporary, it did not significantly change her duties, and the additional work fell within her position description and pay grade.[270]  Ms. Ellington does not address whether this specific event constitutes a materially adverse action.  However, she does not dispute the Secretary's contention that the increased workload was temporary and did not change the nature of her work.

Where there is no reason to believe this action would have dissuaded a reasonable person from engaging in protected activity under Title VII, Ms. Ellington cannot establish a prima facie case of retaliation based on this event.  Accordingly, the Secretary is entitled to summary judgment on this claim.

### c.  Denial of Leave (Retaliation Claim Three)

The Secretary is entitled to summary judgment on Ms. Ellington's third retaliation claim because Ms. Ellington cannot establish a prima facie case as to this claim.  While a "materially adverse action for purposes of a retaliation claim need not affect the employee's terms and conditions of employment," the action by an employer must amount to more than "trivial

---

[269] *Smout v. Cutrubus Motors*, No. 1:15-cv-1, 2016 U.S. Dist. LEXIS 81110, at *14 (D. Utah June 21, 2016) (unpublished) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007)).

[270] (MSJ 24, Doc. No. 23; *see also* Ex. B to MSJ, Creacy Decl. Q&A 46, Doc. No. 24-1 at 11.)

harm."[271]  "[T]he denial of leave alone does not necessarily amount to adverse action, even in the context of a Title VII retaliation claim."[272]

The Secretary argues Ms. Creacy's failure to approve Ms. Ellington's request for unplanned leave cannot be considered a materially adverse action where Ms. Creacy had "legitimate concerns about impending work deadlines."[273]  The Secretary supports this contention with evidence that approval of unplanned leave was subject to supervisor discretion, and Ms. Creacy denied the leave request of at least one other employee.[274]  Ms. Ellington failed to argue this point or to identify evidence otherwise showing the denial of her leave was a materially adverse action.

The denial of Ms. Ellington's leave was, at most, a trivial harm.  It was an isolated event which did not affect her overall right to take leave.  Where at least one other employee was also denied leave,[275] Ms. Ellington cannot show the denial was a materially adverse action.  Denial of unplanned leave in this circumstance is a negligible inconvenience which would not dissuade a reasonable employee from engaging in protected activity under Title VII.  Accordingly, Ms.

---

[271] *See Moore-Stovall v. Shinseki*, 969 F. Supp. 2d 1309, 1329 (D. Kan. 2013) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).

[272] *Baird v. Burlington N. Santa Fe*, No. 11-1323 (DWF/LIB), 2013 U.S. Dist. LEXIS 189467, at *71 (N.D. Minn. Mar. 1, 2013) (unpublished).

[273] (MSJ 25, Doc. No. 23; *see also* Ex. S to MSJ, Email Commc'n between Amanda Creacy and Marvie Ellington (July 16, 2015 3:30 pm to July 21, 2015 12:01 pm), Doc. No. 25-4.)

[274] (*See* MSJ, SMF ¶ 18, Doc. No. 23; Ex. R. to MSJ, Master Labor Agreement, Article 23, Annual Leave, Doc. No. 25-3; Ex. CC to MSJ, CEIA Branch Emps. Denied Leave, Doc. No. 25-14.)

[275] (*See* Ex. CC to MSJ, CEIA Branch Emps. Denied Leave, Doc. No. 25-14.)

Ellington cannot establish a prima facie case of retaliation based on this event, and the Secretary is entitled to summary judgment on this claim.

### d. Reassignment of Duties (Retaliation Claim Four)

The Secretary is entitled to summary judgment on Ms. Ellington's fourth retaliation claim because Ms. Ellington cannot establish a prima facie case as to this claim.  Although Ms. Ellington raises genuine disputes of material fact with regard to whether the reassignment of duties constitutes a materially adverse action, the undisputed facts do not support a finding that the reassignment of duties was causally connected to her protected activity.

Reassignment of duties may be a materially adverse action when accompanied by evidence that the reassignment was "tangible or adverse" to the employee's job status.[276]  While the mere "alteration of job responsibilities" is insufficient to establish this,[277] "demotion" or an "unwelcome reassignment with significantly different duties" is sufficient.[278]

The Secretary contends the October 2015 reassignment of duties was not a materially adverse action because Ms. Ellington's duties remained "within [her] position description and grade," and because Ms. Creacy worked with Mr. Fry to "ensure the workloads were equally and appropriately distributed."[279]  As discussed in Part II.d.i. of this order, Ms. Ellington asserts the reassignment of her major duties impaired her chances of advancement.  Additionally, in her

---

[276] *See Hanh Ho Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1267 (10th Cir. 2004).

[277] *See id.*

[278] *Ferencich v. Merritt*, 79 F. App'x 408, 412 (10th Cir. 2003) (unpublished).

[279] (MSJ 24, Doc. No. 23; *see also* Ex. B to MSJ, Creacy Decl. Q&A 69, Doc. No. 24-1 at 16–17; Ex. O to MSJ, Fry Decl. Q&A 67, Doc. No. 24-14 at 13.)

declaration, Ms. Ellington explicitly stated the reassignment was "unwelcome[]."[280]  These

contentions, when considered with the evidence in the record establishing that Ms. Ellington's

duties were altered and significantly reduced,[281] are sufficient to raise a genuine dispute of fact

as to whether the reassignment of duties was materially adverse.

However, Ms. Ellington cannot establish a prima facie case because she has not presented

any evidence of a causal connection between the reassignment of her duties and her prior

protected activity.  The Secretary contends there is no causal connection[282] where Ms. Creacy's

declaration states Ms. Ellington's "prior EEO activity was never a factor in the decision to re-

alig[n] the team's workload,"[283] and Mr. Fry's declaration indicates the same.[284]  The record

bears out this claim.

Two instances of protected activity are considered in support of Ms. Ellington's prima

facie case: (1) a formal EEO complaint she filed on May 14, 2014,[285] and (2) a formal EEO

complaint she filed on July 27, 2015.[286]  The May 2014 EEO complaint is insufficient to support

---

[280] (Ex. F to MSJ, Ellington Decl. Q&A 85, Doc. No. 24-5.)

[281] (*See* Ex. B to MSJ, Creacy Decl. Q&A 80, Doc. No. 24-1 at 18 (conceding Ms. Ellington's workload was "reduced from 2 divisions down to 1").)

[282] (MSJ 25, Doc. No. 23.)

[283] (Ex. B to MSJ, Creacy Decl. Q&A 69, Doc. No. 24-1 at 16–17.)

[284] (*See* Ex. O to MSJ, Fry Decl. Q&A 68, 74, Doc. No. 24-14 at 13, 14.)

[285] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 42, Doc. No. 27-13 (EEO complaint number 8L1M14022).)

[286] (Ex. J to MSJ, Formal EEO Compl. (July 27, 2015), Doc. No. 24-9; Ex. K to MSJ, EEO Final Agency Dec. 3, Doc. No. 24-10 (EEO complaint number 8L1M15034).)

this claim of retaliation because the reassignment of duties occurred more than a year later.[287]

This means a causal connection may not be inferred,[288] and Ms. Ellington "must present other

evidence—more than mere speculation, conjecture, or surmise"[289]—tying the reassignment of

duties to the May 2014 EEO complaint.  Ms. Ellington has failed to provide such evidence.  The

July 2015 EEO complaint filed against Ms. Creacy[290] is insufficient to support this claim of

retaliation because there is no indication Ms. Creacy or Mr. Fry were aware of this specific EEO

complaint at the time the reassignment plan was announced or implemented.   "The proximity

between a [protected] activity and the alleged retaliatory act is meaningless unless those who

caused the alleged retaliatory act to occur are shown to have been aware of the specific

activity."[291]  Ms. Ellington filed her EEO complaint on July 27, 2015, but the reassignment plan

was announced before this—on July 20, 2015.[292]  Nothing in the record establishes Ms. Creacy

---

[287] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 15, 42, Doc. No. 27-13.)

[288] *See Bekkem*, 915 F.3d at 1271.

[289] *Id.* (internal quotation marks omitted).

[290] (*See* Ex. J to MSJ, Formal EEO Compl. (July 27, 2015), Doc. No. 24-9.)

[291] *Luke v. Hosp. Shared Servs.*, 513 F. App'x 763, 767 (10th Cir. 2013) (unpublished); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("[Plaintiff] must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity."); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) ("[A] plaintiff must show that the individual who took adverse action against [her] knew of the employee's protected activity." (second alteration in original) (internal quotation marks omitted)).

[292] (Ex. E to Opp'n, Email from Amanda Creacy to the 75th Civil Engineering Group (July 20, 2015), Doc. No. 27-5.)

or Mr. Fry were aware of this EEO complaint at the time the reassignment plan was implemented

(October 2015), let alone at the time it was announced (July 2015).[293]

Where Ms. Ellington has not presented evidence of a causal connection between the

reassignment of duties and her protected activity, she cannot establish a prima facie case of

retaliation based on this event, and the Secretary is entitled to summary judgment on this claim.

### e.   Letter of Reprimand (Retaliation Claim Five)

Ms. Ellington raises genuine disputes of material fact with regard to her fifth retaliation

claim such that the Secretary's motion for summary judgment must be denied as to this claim.

Specifically, Ms. Ellington raises disputes as to whether the letter of reprimand constitutes a

materially adverse action causally connected to her protected activity and whether the

Secretary's explanation for this action is pretextual.

### i.   Prima Facie Case

Ms. Ellington raises genuine disputes of material fact as to whether the letter of

reprimand constitutes a materially adverse action.  In the retaliation context, a letter of reprimand

"will only constitute an adverse employment action if it adversely affects the terms and

conditions of the plaintiff's employment—for example, if it affects the likelihood that the

---

[293] Ms. Creacy and Mr. Fry's declarations use the term "prior protected activity" to refer to protected activity occurring before the July 27, 2015 EEO complaint and "current protected activity" to refer to the July 27, 2015 complaint.  (*See generally* Ex. B to MSJ, Creacy Decl., Doc. No. 24-1; Ex. O to MSJ, Fry Decl., Doc. No. 24-14.)  The record shows only that Ms. Creacy and Ms. Fry knew of protected activity occurring *before* the July 2015 EEO complaint at the time of the reassignment—not of the July 2015 complaint itself.  (*See* Ex. B to MSJ, Creacy Decl. Q&A 16, 69, Doc. No. 24-1 at 4, 16–17; Ex. O to MSJ, Fry Decl. Q&A 17, 66, 68, Doc. No. 24-14 at 3–4, 12–13.)

plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities."[294]

In support of his claim that the letter of reprimand is not a materially adverse action for retaliation purposes, the Secretary renews the arguments he made in the discrimination context (discussed in Part II.e.i. of this order).[295] In short, he claims that where the letter of reprimand did not affect Ms. Ellington's pay or position, it had no detrimental effect.[296] Ms. Ellington asserts the letter of reprimand harmed her future prospects by impeding her advancement.[297] As discussed in Part II.e.i. above, the letter of reprimand was a disciplinary action,[298] meaning it carried an inherent risk of impacting Ms. Ellington's employment. The Secretary's own statements illustrate the possibility of detrimental effects on Ms. Ellington's future employment should she engage in "further inappropriate behavior."[299] Considering the evidence in the light most favorable to Ms. Ellington, she has raised a genuine dispute of fact as to whether the letter of reprimand was a materially adverse action.

---

[294] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 534 (10th Cir. 2006) (unpublished); s*ee also Rennard v. Woodworker's Supply, Inc.*, 101 F. App'x 296, 307 (10th Cir. 2004) (unpublished) (stating a letter of reprimand must have "had an[] immediate or practical effect on [a plaintiff's] job status").

[295] (*See* MSJ 26, Doc. No. 23.)

[296] (*Id.*; *see also* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[297] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 15, 36, 38, Doc. No. 27-13.)

[298] (*See* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[299] (*See* MSJ 18–19, Doc. No. 23; *see also* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016) ¶ 3, Doc. No. 25-7.)

Ms. Ellington also raises genuine disputes of material fact as to whether the letter of reprimand is causally connected to her protected activity.  The Secretary argues Ms. Ellington's protected activity did not impact Ms. Creacy's decision to issue the letter of reprimand, and points to Ms. Creacy's declaration in support of this argument.[300]  But considering the facts in the light most favorable to Ms. Ellington, she has raised genuine disputes of material fact as to this issue.  The same two instances of protected activity are considered in support of Ms. Ellington's prima facie case.  As before, Ms. Ellington cannot establish a causal connection between her May 14, 2014 EEO complaint and the letter of reprimand because the notice of proposed reprimand was first given in November 2015—more than eighteen months after the EEO complaint.[301]  And Ms. Ellington has provided no other evidence of a causal connection sufficient to tie the letter to the May 2014 EEO complaint.[302]

However, Ms. Ellington has raised genuine disputes of fact as to whether the letter of reprimand was causally connected to the EEO complaint she filed on July 27, 2015.[303]  Nearly four months after she filed this complaint, on November 17, 2015, Ms. Ellington received a

---

[300] (*See* MSJ 26, Doc. No. 23; Ex. B to MSJ, Creacy Decl. Q&A 29, Doc. No. 24-1 at 32.)

[301] (*See* Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6; Ex. M to Opp'n, Pl.'s Interrog. Resps. 42, Doc. No. 27-13.)

[302] *See Bekkem*, 915 F.3d at 1271.

[303] (*See* Ex. J to MSJ, Formal EEO Compl. (July 27, 2015), Doc. No. 24-9; Ex. K to MSJ, EEO Final Agency Dec. 3, Doc. No. 24-10.)

notice of reprimand.[304]  Then, on January 6, 2016, a formal letter of reprimand was issued.[305]

Although nearly four months passed between the initial EEO complaint and the notice of

reprimand, Ms. Ellington amended her EEO complaint to add substantive claims on October 16,

2015, November 17, 2015, and January 19, 2016.[306]  This timeframe permits the inference of a

causal connection between this EEO complaint and the letter of reprimand.[307]  Additionally, both

Ms. Creacy and Mr. Fry were aware of this specific instance of protected activity at the time the

letter of reprimand was issued.[308]

Ms. Ellington has presented evidence sufficient to support a prima facie case of

retaliation where the letter constitutes a materially adverse action and a causal connection

between Ms. Ellington's July 2015 EEO complaint and the reprimand letter can be inferred

under the circumstances.

### ii.  Legitimate Nondiscriminatory Reasons and Pretext

---

[304] (*See* Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6.)

[305] (*See* Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7.)

[306] (*Compare* Ex. J to MSJ, Formal EEO Compl. (July 27, 2015) (including claims based on events up to the April 2015 verbal warning), *with* Ex. K to MSJ, EEO Final Agency Dec. 3, 8, Doc. No. 24-10 (evaluating claims based on Ms. Ellington's amended EEO complaint including events up to the January 2016 letter of reprimand).)

[307] *See Bekkem*, 915 F.3d at 1271 (providing that courts may infer a causal connection for gaps less than three months); *see also Cefalu v. Holder*, No. C12-0303 TEH, 2013 U.S. Dist. LEXIS 136917, at *63 (N.D. Cal. Sept. 23, 2013) (unpublished) ("[A]mending an EEO complaint is protected activity."); *McDonald v. Salazar*, No. 08-cv-01905-WYD-MJW, 2010 U.S. Dist. LEXIS 115692, at *34 (D. Colo. Oct. 29, 2010) (unpublished) (finding plaintiff's amended EEO complaint to be protected activity for purpose of a Title VII retaliation claim).

[308] (*See* Ex. B to MSJ, Creacy Decl. Q&A 11–13, Doc. No. 24-1 at 27; Ex. O to MSJ, Fry Decl. Q&A 13, 28, Doc. No. 24-14 at 20, 25–26.)

Ms. Ellington has also raised a genuine dispute of material fact regarding whether the Secretary's explanation for the letter of reprimand is pretextual in the retaliation context.  Courts analyze pretext in the context of retaliation claims the same as for discrimination claims,[309] meaning Ms. Ellington may "take one of three routes to establish pretext: '(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice.'"[310]

The Secretary relies on the same evidence of nondiscriminatory reasons for the letter of reprimand in the retaliation context as in the discrimination context (discussed in Part II.e.ii. of this order).  Specifically, the Secretary contends the letter of reprimand was issued in accordance with Air Force policy as a result of Ms. Ellington's repeatedly inappropriate behavior.[311] According to Ms. Ellington, the letter of reprimand was pretext for Ms. Creacy's belief that "[she], a black woman . . . should not question [Ms. Creacy's] authority,"[312] and was in response

---

[309] *See Mann*, 819 F. App'x at 610 (holding the plaintiff presented sufficient evidence to create a genuine issue of material fact regarding pretext for her retaliation claims based on the same pretext arguments asserted in support of her discrimination claims).

[310] *Id.* at 595 (alteration in original) (quoting *Kendrick*, 220 F.3d at 1230).

[311] (*See* MSJ 21, Doc. No. 23; *see also* Ex. U to MSJ, Notice of Proposed Reprimand, Doc. No. 25-6; Ex. V to MSJ, Letter of Reprimand from Amanda Creacy to Marvie Ellington (Jan. 5, 2016), Doc. No. 25-7; Ex. W to MSJ, Fuit Decl. Q&A 18, Doc. No. 25-8; Ex. O to MSJ, Fry Decl. Q&A 21–24, Doc. No. 24-14; Ex. B to MSJ, Creacy Decl. Q&A 23–25, Doc. No. 24-1 at 28–29.)

[312] (*See* Ex. M to MSJ, EEOC Appeal Dec. 5, Doc. No. 24-12.)

to the fact that she disagreed with Ms. Creacy's policy regarding the government purchase card program, rather than inappropriate behavior on her part.[313]

Considering the evidence in the light most favorable to Ms. Ellington, this assertion that the Secretary's reason for the reprimand letter is false establishes a genuine dispute of fact as to pretext for retaliation.  Accordingly, the Secretary is not entitled to summary judgment as to Ms. Ellington's retaliation claim based on this event.

In sum, Ms. Ellington has presented evidence sufficient to support a prima facie case of retaliation with respect to the January 2016 letter of reprimand.  However, Ms. Ellington has not established a prima facie case of discrimination with respect to the verbal warning or letter of counseling, increased workload, denial of leave, or October 2015 reassignment of duties. Accordingly, the Secretary is entitled to summary judgment on retaliation claims based on these events.

## CONCLUSION

Where Ms. Ellington has presented evidence sufficient to support a prima facie case of discrimination as to the reassignment of her duties (discrimination claim four), and a prima facie case of both discrimination and retaliation as to the letter of reprimand (discrimination and retaliation claim five), and where she has identified genuine disputes of material fact as to whether the Secretary's proffered nondiscriminatory reasons for these acts were pretextual, the Secretary is not entitled to summary judgment as to these claims.  Where Ms. Ellington has otherwise failed to establish prima facie cases of discrimination or retaliation as to all other

---

[313] (*See* Ex. M to Opp'n, Pl.'s Interrog. Resps. 31–34, Doc. No. 27-13; Ex. O to Opp'n, Resp. to Notice of Reprimand (Dec. 11, 2015), Doc. No. 27-15.)

claims (discrimination claims one, two, and three and retaliation claims one, two, three, and four), the Secretary is entitled to summary judgment as to those claims.  Accordingly, the Secretary's Motion for Summary Judgment[314] is GRANTED in part and DENIED in part.  The court ORDERS as follows:

1. Because Ms. Ellington did not sufficiently alleged age discrimination in her complaint, all claims of discrimination based on age are DISMISSED.

2. Because Ms. Ellington failed to exhaust her administrative remedies for any claims based on color, summary judgment is GRANTED in favor of the Secretary for all claims of discrimination based on color.

3. Because Ms. Ellington cannot establish a prima facie case of discrimination or retaliation based on the April 2015 verbal warning or letter of counseling (discrimination claim one and retaliation claim one) summary judgment is GRANTED in favor of the Secretary as to claim one in its entirety.

4. Because Ms. Ellington cannot establish a prima facie case of discrimination or retaliation based on her increased workload in July 2015 (discrimination claim two and retaliation claim two), summary judgment is GRANTED in favor of the Secretary as to claim two in its entirety.

5. Because Ms. Ellington cannot establish a prima facie case of discrimination or retaliation based on the denial of her request for leave on July 24, 2015, and July 30, 2015

---

[314] (Doc. No. 23.)

(discrimination claim three and retaliation claim three), summary judgment is GRANTED in favor of the Secretary as to claim three in its entirety.

6. Because Ms. Ellington has presented evidence sufficient to support a prima facie case of discrimination and raised material disputes as to pretext regarding the October 2015 reassignment of duties, summary judgment is DENIED as to her claim of discrimination based on this event (discrimination claim four).

7. Because Ms. Ellington cannot establish a prima facie case of retaliation based on the October 2015 reassignment of duties, summary judgment is GRANTED in favor of the Secretary as to her claim of retaliation based on this event (retaliation claim four).

8. Because Ms. Ellington has presented evidence sufficient to support a prima facie case of discrimination and retaliation and raised material disputes as to pretext regarding the January 2016 letter of reprimand (discrimination claim five and retaliation claim five), summary judgment is DENIED as to her claims of discrimination and retaliation based on this event.

DATED this 10th day of March, 2023.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge